THOMAS RANDALL, APPELLANT, vs. WILLIAM R. PETTES, CASHIER, &c., APPELLEE.

1. Ordinance No. VIII. of the Convention of 1865 applies to contracts made during the war of 1861–5, and by the terms of the ordinance, courts are "authorized to admit testimony as to the value of the property or consideration contemplated by the parties;" *held:* that the testimony must be confined to the value of the consideration at the time the contract was made.

2. A bank holds the notes of R., for securing which R. pledged a quantity of cotton which was left in his possession to be disposed of by the bank to meet the notes. R. subsequently sold the cotton and deposited the proceeds in the bank to his own credit in his bank account, and afterwards drew out by his checks all the funds so deposited without applying or directing the bank to apply such deposits to the payment or satisfaction of the notes; *held:* that though there were balances to his credit from time to time sufficient to cover the amount of the notes after they became due, yet, as he neglected to appropriate such balances to the payment of the notes, but drew them out, it is too late to demand the extinguishment of the notes by the application of such balances.

3. Deposits in a bank to account of the depositor cannot be considered as *payments* made upon notes owing to the bank, though the bank may hold a sufficient amount of such deposits to meet the indebtedness; but its right to do so is at its option.

The subject of " appropriation of payments" incidentally considered and leading authorities referred to.

Appeal from the Circuit Court of the Middle Circuit sitting for Leon county.

Statement of case by RANDALL, C. J.:

Suit was commenced February 12th, 1867, upon two promissory notes made by appellant, defendant below, to plaintiff, appellee, one for $350, dated Tallahassee, February 27th, 1862, with interest after maturity at 8 per cent., at nine months, and due November 27th, 1862, and one for $421, dated Tallahassee, January 18th, 1862, with interest after maturity at 8 per cent., at six months, and due July 18th, 1862.

The defendant pleads,

I. Non assumpsit.

II. *Actionem non*, because, after the making of the notes, viz.: 29th November, 1862, after the last-mentioned note became due, defendant delivered the plaintiff *the said cotton*, according to the receipts appended to said notes, which plaintiff received in satisfaction and discharge of said notes.

III. For further plea, *actionem non*, because defendant,

Thomas Randall vs. William R. Pettes, Cashier, &c.—Statement of Case.

after making said notes and before suit, to wit: December 3d 1863, at Tallahassee, paid the several sums of money mentioned, &c., with interest thereon.

IV. For further plea, *actionem non*, because, on 24th February, 1864, plaintiff was and still is indebted to defendant in the sum of $800, had and received by plaintiff for use of defendant, and for money due and owing from plaintiff to defendant upon account stated, which said sum exceeds the damages claimed by plaintiff, and out of which money the defendant is ready and willing, and hereby offers to set off and allow to plaintiff the full amount of said damages, &c.

The defendant afterwards, October 1st, 1867, further pleaded that said notes were made in consideration of Confederate money, viz.: bills of the Confederate States of America, such being also the consideration contemplated in payment of the money mentioned in said notes, wherefore defendant prays judgment whether the plaintiff ought to recover the amount in the notes mentioned at its *equivalent specie value* or in United States currency at the present time, or only the specie value of said notes when said notes were executed.

Afterwards, March 23d, 1868, defendant filed his further plea. That this suit is founded upon a contract or agreement made during the late war between the United States and the late Confederate States, and that the consideration of said promissory notes was treasury notes of the late Confederate States, and that the currency contemplated in the payment thereof was Confederate treasury notes; and further, that said Confederate treasury notes became greatly depreciated at the close of 1864, and valueless at the close of the war; and under the provisions of Ordinance No. VIII., of the Constitution (of 1865), defendant prays judgment whether plaintiff's claim under said contract *ought not to be scaled* according to the standard value of said Confederate treasury notes at the close of the year 1863, when he had a large sum (sufficient to cover this claim) on deposit with the bank, on February 24th, 1864, when his dealings

with said bank closed, as shown by transcript from its books now on file among the papers in this cause.

The plaintiff filed a general replication to the first plea, and to the other pleas specially denies the facts therein alleged. Concludes to the country, and the defendant *similiter*.

The bill of exceptions discloses that there were annexed to the said promissory notes, respectively, the following instruments in writing:

"Received, January 18th, 1862, from the State Bank of Florida, forty bales of cotton marked T. R., Nos. 1 to 40, inclusive, subject to the order of said State Bank of Florida, and to be held by me under cover and carefully protected, which forty bales of cotton are to be disposed of by said State Bank of Florida to meet my note held by them due July 18th, 1862.

"THOMAS RANDALL."

"Received and held by me subject to the order of W. R. Pettes, cashier, twenty bales cotton marked T. R., Nos. 41 to 60, inclusive, at my plantation in Jefferson county, Florida, which cotton is to be delivered to said W. R. Pettes, cashier, or order, whenever called for, to be sold at such time and point as he may select, and from the proceeds of said cotton, when sold, my note of this date for $350 and interest, together with all charges which may accrue on said cotton, is to be deducted, and the balance remaining, if any, is to be accounted for to me by said W. R. Pettes, cashier. The cotton is held at my risk.

"TALLAHASSEE, February 27th, 1862.

"THOMAS RANDALL."

Which, together with said promissory notes, were offered in evidence by plaintiff.

The plaintiff also offered in evidence the testimony of Philip T. Pearce, that in January and February, 1862, he was offered a large sum in gold at 10 per cent., and that in the latter part of February, 1862, a considerable sum in gold was sold in

Jefferson county at 15 per cent., and that the price of gold did not exceed those sums in Leon county, during January and February, 1862.

Arvah Hopkins also testified that the State Bank of Florida refused to place the terms "Confederate funds" in the face of their notes taken for loans, and that there was but very little difference between the value of Confederate notes and gold in January and February, 1862. The deposition of W. R. Pettes was offered, who testified that he was cashier of the State Bank, and defendant borrowed money from said bank at the date of said notes, and gave these notes therefor. Cotton was pledged by defendant as security. Defendant never delivered the cotton to me or to any other person, so far as he knew, in discharge of said notes. Defendant never paid said notes or any part thereof, to witness's knowledge. Defendant never tendered any payment thereof. That witness purchased cotton of defendant, but the bank had no concern in the purchase; purchased it for F. A. Luling; paid the purchase money to defendant; there never was a request or suggestion made by defendant that I should retain any part of the purchase money, and apply the same to the payment of said notes. In November, 1866, I stated to defendant that no part of the purchase money of the cotton had been applied to the payment of the notes or either of them, that no cotton had been delivered by defendant to me as cashier or otherwise, to pay said notes. I reminded him that on the occasion of each purchase I had paid him all the purchase money for the cotton. Offered to show him by the books and papers of the bank the truth of these facts. Think defendant called and inspected the books and papers, and he expressed surprise that the notes remained unpaid, but made no objection to the correctness of the accounts. The notes are wholly unpaid.

On cross-examination witness testified: That defendant never sold or delivered to him, as cashier, any of the cotton pledged as aforesaid; the cotton purchased for Luling was not under

pledge to the bank, and there was no understanding that the proceeds should be applied to the extinguishment of this claim. Defendant received all the proceeds. (Witness examines the transcript of bank books.) The balances accruing in defendant's favor were not applied to payment of the notes because defendant never ordered any such disposition of his funds; never checked for that purpose. The bank and bank officers could not make such application of their own motion.

No cotton pledged to the bank was ever purchased by witness in any capacity, or by any other persons that witness knows of. Believes when he paid for the cotton purchased on account of Luling, defendant deposited the purchase moneys paid him to his individual credit in bank. Witness was cashier; ceased to act as such in 1865.

Defendant was sworn as a witness, and testified that the notes were given for Confederate money and in connection with a Confederate money transaction. The fact of the notes being in existence escaped his mind. Had large deposits in the bank from 1862, during several years, to and including 1864, and during that time there were balances in his favor of Confederate notes in the bank. The cotton pledged to the bank was sold by witness and the proceeds deposited. Could not say that he had paid the notes, or had ever directed their payment, or appropriation of the deposits to their payment, by the bank, and the moneys mentioned as on deposit during 1862, 1863, and 1864, *were all drawn out by him* from time to time upon his checks. After the close of the war he called on B. C. Lewis, agent of the bank, who furnished him with a statement of his bank account, (found in Mr. Pettes' testimony.) [The statement referred to is an account of deposits in bank and checks against them, extending from May 28, 1862, to March 4, 1864. At the maturity of the first note there appears a balance in defendant's favor of $495.40; at maturity of second note, $443; on December 31, 1863, $2,947; and March 4, 1864, defendant had checked out this balance and overdrawn to the amount of $428, which he paid to the bank on that day.]

Defendant then offered as a witness Arvah Hopkins, who was sworn. Whereupon defendant's counsel, asserting his prior right of appropriation of a sufficient amount of the Confederate notes for the payment of the notes in suit, out of a balance claimed to be due to him on his deposit account with the bank on December 31, 1863, offered to prove the specie value of Confederate treasury notes March 4, 1864, for the purpose of scaling any balance which the jury might find in defendant's favor at that time, and asked the following question: What was the value of Confederate treasury notes on the 31st day of December, A. D. 1862; 31st December, 1863, and March 4, 1864? To which question plaintiff, by his counsel, objected, on the ground that no direction to appropriate any balance at any time in favor of the defendant being proven, and no payment being directed, but on the contrary it having been admitted that all the deposits had been subsequently drawn out, and no appropriation to or payment of the notes in suit had been directed, the question was irrelevant, there being nothing to which the value, if ascertained, could be applied, and it being first necessary to prove a payment or appropriation before evidence of its value was admissible, and because evidence of value is confined by the ordinance to the date the contract bears.

The court sustained the objection, and refused to admit evidence to that effect, exclusively restricting evidence of such character to proof of the specie value of such currency to the *date* of each note, and refusing to admit proof of the specie value of Confederate currency at any subsequent time.

To which ruling the defendant excepted.

A verdict was rendered for $946.19 in favor of plaintiff, judgment entered, and the defendant appealed.

The appellant assigns the following errors:

I. In the entire action of the court in not conforming to the intent and spirit of the VIIIth Ordinance of the Constitution of 1865, which authorizes adjudication upon principles of *equity* in cases of this character.

II. In ruling against the equity of the case, which consists in scaling the amount of the debt according to the specie standard of the value of the currency in which its payment was contemplated by the parties ; and the scaling process is applicable *only when the debt becomes due.* The ordinance does not prescribe the *time* of scaling, and the ruling of the court in determining the date of the contract as the proper time, is an error of judicial interpretation, and inconsistent with the import and spirit of the ordinance.

III. In refusing to admit evidence offered to prove the specie value of Confederate currency December 31, 1863, under the second plea under the ordinance, the plaintiff in error having been entitled by his prior right of appropriation to extinguish the debt out of the balance in his favor on the books of the bank at that time ; and the defendant in error not being entitled to recover more than the specie value of Confederate currency for the amount of the principal and interest of the notes in suit, which balances he subsequently *allowed the plaintiff in error to draw out.*

IV. In refusing evidence offered to prove the value of Confederate currency March 4, 1864, when the dealings between the parties closed, because the compulsory exaction of payment in sound funds, for a debt contracted in Confederate currency, and contemplated as payable in it, is manifestly against equity and good conscience, and the very wrong against which the ordinance, in the spirit of equity, intended to guard and provide. The question, therefore, was not irrelevant.

V. The essence of the defense being the debtor's prior right of appropriation of his *deposits* in bank to the *payment* of the debt he was owing it, the court erred in refusing evidence tending to show the motive of defendant in error in not making the appropriation of the large balance existing in plaintiff's favor December 31, 1863, sufficient to extinguish the debt, and in holding it in reserve for future checks, *until it was all drawn out,* without notifying plaintiff in error of the non-payment of

these notes, or demanding payment of the same, the motive being the extremely low scale of depreciation of Confederate currency at that time.

*A. L. Woodward*, for Appellant.

1. If there be error in the record the court will correct it, though not pointed out in the assignment of errors. Marringvale vs. Jones, 3 Har., 36.

2. Cases may be determined in the Supreme Court on grounds which were not taken nor even suggested in the court below. Gautier vs. Franklin, 1 Texas, 732, and authorities there cited.

3. But though this court will re-examine questions decided against respondent, as well as such passed *sub silentio*, or consider points made here for the first time, if raised by the pleadings and proofs, yet care must be taken that neither party be permitted to mislead his adversary, or to make objections which, if made in the court below, might have been obviated. South. Life Ins. T. Co. vs. Cole, 4 Fla., 359.

4. While the court recognizes the doctrine that upon a writ of error it is its province to look beyond the bill of exceptions, and consider errors apparent upon the face of the record, yet this rule must be limited to such errors only as have not been waived by the record. Union Bank vs. Call, 5 Fla., 406.

5. The Supreme Court has power to allow amendments to assignment of errors, and will exercise the power when justice requires it, but the application must be reasonably made. Parsons vs. Copeland, 5 Mich., 144.

### BAILMENT.

1. The contract of appellant for a loan of Confederate currency being based upon a bailment or pledge of sixty bales of cotton to secure its payment, the two contracts ought to be considered in their mutual dependence and connection; the appellee, while vested with the rights, assuming the duties of bailee.

1. Ordinary care of the property.

2. Its sale upon maturity of the debt, the application of the proceeds to payment, and restitution of the balance to the owner.

Nor are these rights impaired, or duties remitted, or liabilities discharged by a re-transfer of the property for a temporary or special purpose.

2. If, therefore, the performance by the debtor were hindered, prevented, or delayed by the creditor, the liability of the former will be correspondingly modified.

3. By the failure and omission of appellee to apply appellant's deposits to the payment of his notes at maturity, he is entitled to recover only their *specie value* as they become due.

4. A bank failing to demand payment of a bill received for collection, makes the bill its own, and becomes liable to the owner for the amount. Bank of Washington vs. Triplett, 1 Peters, 25.

5. If a dealer with a bank has a balance to his credit on a general cash account with the bank, and dies indebted to the bank on a judgment, and also on a simple contract, the bank may, independently of the statute of set-off, apply such balance to the simple contract. State Bank vs. Armstrong, 4 Dev., 519. In Delaware a bank is bound to apply deposits of a maker to the payment of his note. McDowell vs. Bank, 1 Hare, 369.

6. The proceeds of a pledge for a particular advance are to be applied to the payment of that advance. Mazziore vs. Proche, 8 Cal., 522. It is a settled rule that the source or fund from which a payment is made will direct its application. Hicks vs. Bingham, 11 Mass., 300.

7. Finally: appellee having neglected to apply appellant's deposits to the payment of his notes, Dec. 31, 1863, it is respectfully submitted whether appellee is entitled to recover more than the *specie* value of their amount at that time.

AUTHORITIES.

11 Kent's Com., p. 577–8; Chitty on Contracts, 503—notes;

Edwards on Bailment, pp. 188, 89; 211, 233–34, 250, last paragraph.

### VIII. ORDINANCE, CONSTITUTION 1865.

1. The ordinance having originated in a spirit of equity, it is entitled to a corresponding interpretation to afford the protection it was designed to secure.

2. Equity treats as done that which ought to be done, at least for those who have a right to pray it ought to be done. Willard's Equity Jurisprudence, 47.

3. Mutuality is of the essence of every contract; it must be fair in all its parts, and equal in its terms; and whether it be originally wanting in these elements, or subsequently becomes so by the acts or conduct of the parties, a court of equity will modify it according to the circumstances of the case and the merits of the parties. Willard's Equity Jurisprudence, pp. 291–92, 94; *vide* 267–71, 72, 74.

4. In the case of an executory agreement, the time appointed for its performance may not be of its essence, yet may become material by circumstances or by the conduct of the parties, and if so made material, the party in default cannot demand specific execution of the other. Jackson vs. Luggon, 3 Leigh, 161.

5. A person asking specific execution of a contract, must must either show himself without default, or must exhibit some excuse for such default. Campbell vs. Harrison, 3 Litt., 292; Moore vs. Skidmore, Litt. Sel. Cases, 494.

6. Gross negligence for an unreasonable time to do that which it was incumbent upon a party to do, is equivalent to fraud, and justifies a dissolution of the contract. Bullock vs. Beones, 3 A. K. Mar., 494.

7. The maturity of a promissory note for a loan of Confederate currency, and payable in it, is the proper time for scaling *its specie value :*

1. Because it is not demandable before.

2. Because the payee is bound to receive payment in such currency at that time, and,

3. Because the lender incurs the risk of depreciation.

### AUTHORITIES.

Smith's Constitutional Construction, pp. 631–36; Blackstone, 658–92; 814, 819–21–26; —————— on Statutes, sections 547, 675, 703, 709; 1 Wash. Va. Cases, 194; 2 Wash. Va. Cases, 94 to 104; 1 Mumf., 460; Day vs. Murdoch, 1 Mumford, 460; 26 Ordinance Constitution Ala., 1865.

### APPROPRIATION OF PAYMENT.

1. The rules established by the English and American authorities to regulate the appropriation of payments between different debts, are,

1. The debtor has the absolute right of appropriation.

2. Upon the debtor's omission to exercise the right, it reverts to the creditor.

3. If neither party exercise the right, the payment remaining indefinite, the court being applied to, declares the law in accordance with the principles of equity and justice.

2. The omission of the debtor to exercise his right has merely the effect of transferring it to the creditor *sub modo*, to be exercised for their mutual benefit, and not in a manner partial or exclusive.

3. The debtor's right of appropriation is never lost, unless by *express relinquishment; his unequivocal consent must be shown.*

4. A general payment will be referred to a debt due in preference to one not due; a *payment* rather than a *deposit* is to be presumed.

5. In the absence of evidence showing unmistakably by the intention of the parties, a general payment to a commission merchant with whom a debtor has a running account, will be referred to his existing indebtedness, and not to future advances. 27 Ala.

6. There are some considerations which, without express declarations, control a creditor's right of appropriation, either

as affording a legal presumption of the debtor's intention, or, as being of paramount obligation of reason and justice.

7. It is a paramount rule, whenever the appropriation of a general and indefinite payment devolves upon the court, that the intention of the parties before and at the time, so far as it can be inferred, shall prevail; and when no particular inference can be made, the court will be guided by a presumed intention founded on reason, probability, and justice.

8. It is, therefore, respectfully submitted, whether in this case, where appellee was debtor of appellant to the extent of *the balances in his favor on deposit*, the appellee was not bound in *good faith* to apply such balances to the payment of appellant's debt.

### AUTHORITIES.

1 Pothier on Obligations, 328–31, 32, 33, 35; 1 Story's Equity Jurisprudence, sec. 459 a, 459 b, 459 e; Hilliard's Equity Jurisprudence, 98 to 100.

### REPORTS.

1 Am. Lead. Cases, 276–77, 78, and 281, 283–88 and 94; Clayton's Case, 1 Merrivale, 607–8; Sandiford vs. Taylor, 7 Wheat., 13, 20; Opinion of Marshal, J., 5 Peters, 209, 13; Baker vs. Stackpole, 9 Cowen, 420–35; Patterson vs. Hull, 9 Cowen, 747, 65, 66 to 78; Ayer vs. Hawkins, 19 Verm't, 28 and 30; Milliken vs. Tufts, 31 Maine, 499, 500; Poindexter vs. Laroche, 7 S. & M., 713; Barnes vs. Williams, 10 S. & M., 118; Miller vs. Leflore, 32 Miss., (2 George,) 644, *vide* agreement of counsel, 640, 41; Harrison, vs. Johnson, 27 Ala.; Baber Hens vs. Shekney, 36 Ala., 495.

A person owing money under distinct contracts has undoubtedly a right to apply his payment to whichever debt he may choose, and although prudence suggest an express direction of his payment at the time of their being made, yet there may be cases in which this power would be completely exercised at the time. A direction may be evidenced by circumstances as well as by words. A payment may be attended with circumstances

which demonstrate its application as plainly as words could demonstrate it. The inquiry, then, in this case, is, whether the payments made by appellant to the appellee were accompanied with circumstances which amount to an exercise of the power to apply them. Taylor vs. Sandford, 7 Wheat., 13, 20; *vide* 5 Peters Con. Rep., p. 209, 13. Circumstances having indicated the appropriation designed by the payer, the creditor shall not apply it otherwise. Scott vs. Fisher, 4 Monro, 387. It is not necessary that the debtor should formally declare his election at the moment of making payment; it is held to be sufficient to restrain the creditor, if there is anything clearly indicating the intention of the debtor, or tending to cause a fair presumption as to what it would be. Carpenter vs. Gora, 19 New Hampshire, 487.

### DEPOSITOR AND DEPOSITARY.

1. By the modern decisions the contracts of corporations rest upon the same basis as those of natural persons, and are governed by the same rules. Flecker vs. Bank of U. S., 8 Whea., 338.

2. The appellant was entitled, without *express* directions, to have his deposits in bank applied to the payment of his notes held by it, at maturity.

3. A bank being the debtor of its depositor to the extent of his undrawn deposits, and having the right of applying balances in his favor to the payment of a debt which it holds against him, it is respectfully submitted whether appellee was not bound to make such appropriation, and being in default therein, whether any more be recoverable than the *specie value of the debt when due.*

4. Where money paid into a bank is passed generally to the credit of the owner, and not received as a *special deposit*, the money may be applied by the bank to the payment of any demand they may have against the depositor, and if the money is lost without the default of the bank, the depositor is entitled to payment. Commercial Bank vs. Hughes, 17 Wendell, 94.

5. If a bank has no deposit funds of a principal debtor which it may legally apply to the discharge of any indebtedness to it, and does not so apply it, the sureties are discharged to the extent of the funds. Dawson vs. Real Est. Bank, 5 Pike, 283.

6. It is therefore submitted. whether the default of the appellee can in common justice be visited in its consequences upon the appellant, who has committed no breach of contract, and done no wrong, or whether appellee shall profit by his default in allowing appellant to draw upon his depositors after the *maturity of his notes,* without notifying him of non-payment until his deposits had been entirely absorbed; and appellant submits the appropriateness of the maxim to the appellee: "He who is silent when he ought to speak, shall not be heard when he does."

AUTHORITIES.

19 New York Rep., 499; 34 Barb., 238. A deposit of depreciated bank notes in bank is sufficient to entitle the drawer of a check to due diligence on the part of the holder in presenting the same. 8 Miss., 382.

*M. D. Papy,* for Appellee.

WESTCOTT, J., being of counsel in the court below, did not sit in this case.

RANDALL, C. J., delivered the opinion of the Court :

The errors assigned are properly reducible to two points, viz. :
1st. The proper construction of Ordinance No. VIII. of the convention of 1865 ; and 2d. The debtor's right of appropriation of funds deposited by him in the bank, and to make the appropriation after the debt became due, and even after the funds so deposited had been entirely drawn out by him.

The ordinance referred to was adopted by a convention of delegates elected by the people soon after the close of the late war, while the country was in a peculiar condition on account of the war and its results.

It is unnecessary to consider, in determining this case, the general question as to the force and effect of an ordinance of that convention, not incorporated into or referred to in the constitution framed by the convention. Nor is any question raised as to the legality of the consideration of the notes in suit.

I. The appellant claims that the court did not conform to the spirit of the ordinance, and insists that the "scaling proces" is applicable, not at the date of the contract, but at the time when the cause of action occurred, and even later.

The ordinance applies to all "contracts made and entered into during the late war, * * and the courts are thereby authorized to admit testimony as to the value of the property or consideration contemplated by the parties to said contracts, and to instruct the jury to find accordingly ; *provided*, that the defendant shall allege by plea under oath, and prove to the satisfaction of the jury, that the currency contemplated in payment of said contract was Confederate or State Treasury notes, or upon what basis the consideration or the value of the property or its use, which was estimated at the time of the formation of said contract."

This ordinance contemplated the accomplishment of two principal ends : the recognition of the currency, or the thing which supplied the place of currency during the war, and which really formed the standard of nominal values in the transaction of business during the war, not necessarily as a thing of real value, but as a medium of commercial transactions ; and to provide the mode of ascertaining the actual money value of the consideration of the contract, whether such consideration were Confederate or State notes or any thing else. It was a measure of relief extended to those who at the close of the war were found indebted upon contracts founded upon fluctuating and uncertain values. It was not intended to relieve from any and all liability to perform such contracts.

Even if the language of the ordinance in this respect were more obscure than this is claimed to be, the evident intention of

its framers, founded in a spirit of equity and as a "peace measure," was that no debtor should be holden to pay or return more than he actually received ; and on the other hand that the creditor should sustain no loss. The language used is, "the value of the consideration contemplated," &c ; and when it should be pleaded that the currency contemplated in payment was Confederate notes, &c, then the courts are authorized to admit the testimony and to instruct the jury to find accordingly, to wit : according to the value of the property or the *consideration contemplated.*

The testimony of the defendant is that the notes "were given for Confederate money and in connection with a Confederate money transaction." Other than this there is no evidence that shows upon what basis the consideration was estimated ; that any "estimate" was made ; or that the "currency contemplated in payment" was one thing or another.

The currency in use at the time of the making of these notes was worth eighty-five to ninety cents upon the dollar in gold. The defendant then received what was nearly equal in value to gold, and could have exchanged it for gold. When the notes became due these Treasury notes were greatly depreciated, and by estimating the value of his promissory notes by their nominal value in Confederate currency, if he had paid his notes therewith he would have made a handsome margin, and the lender would have encountered a serious loss.

We do not believe the framers of the ordinance intended that the debtor should satisfy the debt contracted by him by paying a smaller amount of money or of value than he received ; or that the loss by depreciation should fall upon any other than the holder of currency, according to the ordinary rule. If they had so intended they would doubtless have said so in plain words ; and in that case, the appellee here would doubtless have attacked the ordinance in another direction, and other questions would have been raised in this cause.

II. The appellant, asserting his prior right of appropriation of

a sufficient amount of the Confederate notes, in the payment of the notes in suit, out of a balance claimed to be due to him on his deposit account with the bank on December 31, 1863, offered to prove the specie value of Confederate Treasury notes March 4, 1864; for the purpose of scaling any balance which the jury might find in his favor at that time, inquired to that end, and the appellee's counsel objected thereto. The objection was made upon the grounds that no direction had been given by defendant to make the appropriation; no payment had been directed; all the deposits had been drawn out by the defendant; the question was irrelevant, there being nothing to which the value if shown could be applied. The court sustained the objection, and restricted the evidence to proof of the specie value of Confederates notes at the *date* of each note, and refusing to admit proof of such value at any subsequent time. This presents the second general ground of exception.

It is a well-settled general rule that if one owes two or more separate debts and pays money to his creditor, the debtor has a right to apply the payment to which of the debts he pleases, provided he elects at the time of payment the purpose for which it is made. If he does not so designate, the payee may elect how it shall be applied. It has been held in some cases that the creditor may appropriate at a future day, even at the time of bringing his action, and is not compelled to make the appropriation immediately, like the debtor. The rule of the civil law is that where no application is made by either party at the time, the law will make the application upon the presumed intention of the debtor. There has been much confusion on the subject in England. Equitable principles have frequently controlled, and the courts have made the application in such manner as to secure either party from the greater hardship or sacrifice. See Pattison vs. Hull, 9 Cowen, 747, reviewing and collating the decisions of the English and American courts. 19 Vt. R., 26; Stone vs. Seymour, 15 Wend., 19.

A person owing money under distinct contracts, has undoubt-

edly a right to apply his payments to whichever debt he may choose, and although prudence might suggest an express direction of the application of his payments at the time of their being made, yet there may be cases in which this power would be completely exercised without any express directions given at the time. A direction may be evidenced by circumstances as well as by words. A payment may be attended by circumstances which demonstrate its application as completely as words could demonstrate it. A positive refusal to pay one debt, and an acknowledgment of another, with a delivery of the sum due upon it, would be such a circumstance. The inquiry then will be whether the payments were accompanied with circumstances which amount to an *exercise* of his *power* to apply them. Tayloe vs. Sandiford, 7 Wheat., 13. Ch. Justice Marshall says, in the Mayor, &c., vs. Patten, 4 Cranch, 317, " It is a clear principle of law, that a person owing money on two several accounts, as upon bond and simple contract, may elect to apply his payments to which amount he pleases ; but if he fails to make the application, the election passes from him to the creditor."

It is equitable to apply payments first to extinguish those debts for which the security is most precarious. 7 Cranch, 572 ; 6 Cr., 8.

It is too late for either party to claim a right to make an appropriation after the controversy has arisen, and *a fortiori*, at the time of trial. 9 Wheat., 720 ; 1 Mason, 328.

If the debtor waive his right to direct the application of a payment, a court of equity will not disturb it. 10 S. & M., 113.

The rules applicable to the subject of the appropriation of *payments* were so fully and ably discussed that we have deemed it fit and proper to examine the authorities to some extent.

"The appellant submits whether in this case, where the appellee was the debtor of the appellant *to the extent of the balances in his favor on deposit,* the appellee was not *bound in good faith* to apply such balances to the payment of the notes." He cites several cases showing the creditor's *right* to apply de-

posits, or to retain them against the depositor's indebtness on other accounts and insists that because he had a right to do so, it was equally his *duty* in a case like the present.

The doctrine of "appropriation of payments" will scarcely apply to the present case. Here were no *payments* made upon these notes; no directions to apply any of the moneys on deposit standing to his credit toward the extinguishment of the notes; the cotton pledged to secure these notes remained in his possession and was sold by him, and the bank was not notified that the moneys deposited by him and passed to his credit in his deposit account were the proceeds of the sale of the cotton pledged; and he draws his checks from day to day against his deposits until his funds are all drawn out; and on the 4th of March, 1864, had overdrawn to the amount of over $400, which he made good on that day, leaving the notes now in suit still unpaid. He expressed surprise when the notes were produced, and said he supposed them to be paid, and had forgotten them. This is doubtless true, and yet the bank had had no intimation that he had desired them to be cancelled by an appropriation of his deposited funds, without express orders to that end, and without his check for the amount upon his deposits. He had *exercised* his right of appropriation of his funds by withdrawing and using them for other purposes, and having done so, it is too late to make the appropriation now that the funds are gone, pursuant to his express directions, beyond the reach of the bank, and have been used by the appellant himself.

It was urged in the argument that by the pledge of sixty bales of cotton by the appellant to the appellee, the latter became the bailee of said cotton, and that it was his duty, therefore, on the sale of the cotton, to apply the proceeds to the extinguishment of the notes.

It is difficult to perceive, however, in view of the fact that the bailor retained the possession of the cotton, and thereby became the bailee of his bailee, and afterwards sold it and appropriated the proceeds to his own use, how he expects to avail

himself of these circumstances to be relieved. Had the bank disposed of the cotton, it would have been liable to account to the party therefor, and to apply the proceeds to the payment of the notes. But the pledgor disposes of the pledged property, converts the proceeds to his own use, the existence of the notes passes from his memory, and now he demands the extinguishment of the indebtedness because the bank did not arbitrarily make the application of his deposit funds, but allowed him to make such application of them as he saw fit.

The judgment of the circuit court must be affirmed.