J. J. BATTLE, *Appellant,* v. JENNINGS NAVAL STORES COM-
PANY, *Appellee.*

Opinion Filed June 15, 1917.

Petition for Rehearing Denied July 14, 1917.

1. When a debtor makes a payment to his creditor the former may at such time direct to what account or item of indebt-

Battle ·v. Jennings Naval Stores Co.—Syllabus.

edness the payment shall be applied. If he fails to do so, the creditor may at such time make application of the payment as he desires. If neither the debtor nor creditor at the time of payment makes any application thereof, the law will appropriate it to the items of indebtedness according to the justice of the case having in view the interests of third persons interested.

2. It is to late [after a controversy has arisen in which third persons are interested for the creditor to claim a right to make an appropriation of a payment by his debtor.

3. In a case where a debtor is indebted in a certain sum of money and executes to his creditor promissory notes therefor payable at a certain time [and executes a mortgage to secure the payment of the same, and at the same time enters into a contract with his creditor under which the latter agrees to make further advances to his debtor in a certain amount during the running of the notes, which contract further provides that additional or fresh advances may be made by the creditor "when payment is made from time to time upon the aforesaid debt" of the debtor and the original indebtedness represented by the notes secured by the mortgage. is carried by the creditor in an open account to which the "further" and "additional advances" are also charged and balances brought down from year to year and such account is credited from time to time by payments made by the debtor, but no application is made at the time of payment by either the debtor or creditor to any particular item of indebtedness, such payments will be applied to the original indebtedness and the advances made in the order of time in which they were made and became due.

4. A subsequent creditor who subsequently to the date of the mortgage reduces his claim to judgment is chargeable with notice of the terms of the recorded mortgage and the contract referred to therein, but is not chargeable with notice of the existence of other or new contracts containing similar or like provisions made between the mortgagor and mortgagee from year to year during the running of the account between them.

Appeal from Circuit Court of Santa Rosa County; A. G. Campbell, Judge.

Decree reversed.

*John C. Avery,* for Appellant;

*E. D. Beggs* and *Blount & Blount & Carter,* for Appellees.

ELLIS, J.—The appellee exhibited its bill of foreclosure in the Circuit Court for Santa Rosa County against J. F. Spivey, O. C. Bell and their wives, George R. Kline as Trustee of the estate of J. F. Spivey, Bankrupt, Citizens Bank of Moultrie, Georgia, and J. J. Battle of the same place.

The bill alleges in substance that in January, 1908, Spivey and Bell as partners engaged in the turpentine business in Santa Rosa County, were indebted to the Williams Naval Stores Company, whose name was afterwards changed to the Jennings Naval Stores Company, in the sum of eighteen thousand five hundred dollars, and executed five promissory notes and delivered them to appellee as evidence of said debt. Three of the notes were for $4,250.00 and became due July 1st, September 15th and November 15th, 1908, respectively; one for $4,470.39 due December 15, 1908, and one for $1,279.61 due January 1, 1909; that a mortgage was executed by the partners to appellee to secure the payment of the principal sum and interest represented by the notes, in which the wives of the mortgagors joined; that the property mortgaged consisted of a certain "turpentine still and the lands situated in Santa Rosa County, Florida, and particularly described as Lots 2, 3 and 4 in Section 1, Township 2 South Range

twenty-seven West," excepting therefrom about sixty acres, "and also all the other property of every kind owned and used by said partnership in conducting and operating such still and turpentine business, and also upon all other property real, personal or mixed, thereafter during the continuance of said mortgage .contract acquired by the said J. F. Spivey and O. C. Bell" in said county, except all stocks of goods kept for sale, etc.; that the mortgage was duly recorded on January 25th, 1908; that subsequently to the execution of the mortgage Spivey and Bell acquired other lands upon which it is alleged the mortgage immediately became a lien to secure the payment of the indebtedness mentioned in and secured by said mortgage; that on November 17, 1914, Spivey was adjudged a bankrupt; that on July 1st, 1915, there still remained due to appellee on the mortgage and the indebtedness secured thereby the sum of $15,212.25 principal and interest; that in February, 1914, Spivey executed a mortgage to the Bank of Moultrie to secure an indebtedness of $2,500.00 upon an undivided two-thirds interest in part of the property mentioned in the bill, but that the mortgage is subject to appellee's lien; that in May, 1915, Battle recovered a judgment against Spivey and Bell as partners in the sum of $274.78 and caused execution to be issued thereon and placed in the Sheriff's hands who levied the same upon part of the property covered by appellee's mortgage and advertised the same for sale; that the mortgaged property, is inadequate security for the payment of the mortgage debt; that the taxes upon a great part of the land covered by the mortgage are unpaid; that the mortgagors agreed in and by the mortgage that the indebtedness should become due and payable and the mortgage foreclosable for all sums secured by it if the indebtedness or any part thereof should not be paid according to the terms of the

said notes and their renewals, and that in the event of foreclosure to pay costs and solicitors' fees which should become a lien upon the mortgaged premises. The prayer was that "an account may be taken in this behalf by or under the direction of the court;" that Spivey and Bell be decreed to pay to the complainants whatever sums shall appear to be due by a short day, and in default that the property be sold and all persons claiming under the defendants Spivey and Bell be foreclosed; that a receiver be appointed to take charge of the mortgaged property and continue the operation of the turpentine business; that Battle be restrained from causing a sale to be made of any of the mortgaged property under his judgment, and for general relief. The mortgage which was attached to the bill as Exhibit "A" and made a part of it contains a clause to the effect that the mortgage is intended to be and is a mortgage to secure payment of the five promissory notes which were therein described; also another clause as follows: "And it is further understood and agreed that the said parties of the first part shall fully perform all and any of the obligations and duties incumbent upon them by the terms of a certain contract, which is called a shipping contract, of even date herewith, and that this instrument is security for the performance of same, and shall not without written consent of the second party first obtained, conceal, sell, pledge, mortgage, or otherwise dispose of, or attempt to conceal, sell, pledge, mortgage or otherwise dispose of any of the property now on hand, or hereafter acquired, which shall be conveyed or covered by this mortgage."

: There was a decree against all the defendants except J. J. Battle, who answered the bill, and the property ordered to be sold. The answer admits substantially the allegations of the bill and sets up the following defenses:

If the mortgage by its terms includes personal property thereafter acquired in lieu of personal property disposed of by Spivey and Bell that Battle's execution is a superior lien upon such substituted property to that of the complainant's mortgage; second, the complainant is guilty of laches in enforcing its lien upon the property of Spivey and Bell, and third, that the indebtedness secured by the mortgage had been paid by Spivey and Bell before the proceedings to foreclose were instituted. The defendant claimed the benefits of Chapter 6907, Acts of 1915, so that he might have a decree against the complainant for the amount of his judgment, interest and costs, if the property of the copartnership should be sold and the proceeds applied to the payment of the indebtedness due to complainant. Testimony was taken and a decree rendered adjudging the equities to be with the complainant as against Battle, and directing the money which had been by order reserved from the proceeds of the sale to cover the Battle judgment and interest to be paid to complainant. From the decree Battle appealed.

The argument of appellant's counsel upon the assignments of error is, that the evidence shows that the indebtedness of Spivey and Bell to the complainant as evidenced by the notes and which the mortgage was given to secure had been paid before the bill to foreclose was filed. Appellee's counsel contends that the mortgage was made to secure not only the payment of the five promissory notes, but the performance of a shipping contract referred to in the mortgage; that the shipping contract after reciting the making of the notes and mortgage by Spivey and Bell provided for additional advances to be made to them by complainant from time to time, which should also be secured by the mortgage; that Spivey and Bell should ship to the mortgagee all their naval stores products pro-

duced or controlled by them, and that "the net proceeds of all shipments made should be applied by the party of the first part or its assigns at its option to the credit, part payment or satisfaction of any open account or note of the parties of the second part, or upon any debt secured by said mortgage." In the shipping contract the party of the first part was the appellee, and the party of the second part Spivey and Bell. Both the mortgage and shipping contract were dated the 15th day of January, 1908.

The testimony consists of numerous contracts, promissory notes, statements of account and the testimony of T. A. Jennings, the president of the complainant corporation.

We gather from the evidence and admissions of counsel in their briefs that Spivey and Bell began business with the company in 1906, and on January 15, 1908, owed the company $17,220.00. It was then agreed that Spivey and Bell should have a limit of credit with the company of $18,500. Notes were taken for that amount and the mortgage and shipping contract executed. The evidence shows that an account was opened by the complainant corporation against Spivey and Bell in which they were charged with the balance of $17,220.00, and the advances during the current year. During the year the account was credited with the proceeds from the naval stores shipped by Spivey and Bell under the shipping contract amounting to $14,893.74, and on December 7, 1908, a balance was brought down on the debit side of the account of $14,307.12, whereupon another shipping contract was entered into between the parties, wherein it was expressly stated that the company was to make further advances to the partnership during the season of 1909 in the sum of $2,692.88, and four new notes were taken from

the partners aggregating $17,000.00. Advances were made during the season of 1909, and the account credited with proceeds from naval stores and merchandise amounting to $18,692.15. On December 30; 1909, a balance of $11,638.41 was brought down against the partners and a new shipping contract entered into in which the company agreed to make further advances during the season of 1910 amounting to $5,275.00, and new notes were taken aggregating the sum of $16,551.82 as recited in the contract, an error apparently of $361.59. Advances were made during the season of 1910 and the account credited with the proceeds from naval stores shipped under the contract amounting to $23,324.32, and on December 8, 1910, a balance was brought down against Spivey and Bell of $12,139.81, whereupon a new shipping contract was made, further advances for the season of 1911 agreed upon in the sum of $3,860.19, and new notes taken for a sum aggregating $16,000.00. The credits for that season were $28,877.07, and on December 4, 1911, a balance of $13,099.84 brought down and a new contract made and advances agreed upon for 1912 to amount to $2,400.16, and new notes aggregating $15,000.00 executed and delivered. The credits during 1912 amounted to $27,177.69 and the balance brought down on December 17, was $12,823.96. On that date a new shipping contract was entered into and advances agreed upon to the amount of $2,676.04, and new notes taken for the balance, and agreed advances aggregating $15,500.00. The credits during 1913 amounted to $17,506.26 and the balance brought down January 9, 1914, was $11,837.26. A new contract entered into, advances for the season of 1914 agreed upon in the sum of $1,662.74 and new notes aggregating $13,500.00 executed and delivered by Spivey and Bell. During that season the credits amounted to

$9,465.16 and the balance brought down on December 13, 1914, was $15,935.27. No new contract was entered into; the credits amounted to $9,227.64, and the balance brought down on August 28, 1915, was $15,574.52, against Spivey and Bell. None of these shipping contracts were recorded, and the advances made each year according to the accounts exceeded the amount agreed upon many thousands of dollars. During the period from January, 1908, to August, 1915, the advances agreed upon between the parties for each year as expressed in the shipping contracts aggregated about $19,844.00, while the amount of credits during that period amounted to $149,104.00. On May 3rd, 1915, Battle recovered judgment against Spivey and Bell upon a promissory note due June 1st, 1913, for $209.00 bearing 8% interest. The note was dated December 27th, 1912.

The case presents a question of application of payments. The fact that an account was opened by the complainant corporation, in which the indebtedness of Spivey and Bell which the mortgage was given to secure was charged and in the same account advances were charged and the account as a whole credited with the net proceeds of each season's shipments and a new balance brought forward at the beginning of the next year, and this system continued from year to year for eight years, raises a question as to how the net proceeds of the shipments by Spivey and Bell were applied by their creditors. There is nothing in the record to show that Spivey and Bell directed their creditor to apply the credits to either the notes or the amount due for excess supplies or advances; nor is there any evidence that the creditor made any application to either debt. The first shipping contract which was dated January 15th, 1908, contained a clause to the effect that the factor

might at its option apply the proceeds of all shipments "to the credit, part payment or satisfaction of any open account or note of said parties of the second part (Spivey and Bell), or upon any debt secured by said mortgage." The contract also contained a clause to the effect that the corporation factor might if it desired so to do, treat the contract as a "continuing one." This language was explained in the following words: "The party of the first part shall have the option when payment is made from time to time upon the aforesaid debt of the parties of the second part, to make fresh advances to said parties of the second part either upon open account or upon promissory notes of the said party, said advances to be in such sum as the party of the first part shall deem expedient, and all indebtedness so incurred by the parties of the second part shall be secured by the lien of the mortgage last above mentioned."

The rule as to the application of payments which obtains in this State was announced by this Court in Randall v. Parramore & Smith, 1 Fla. 409, as follows: "Where a debtor indebted on several accounts makes a payment he may apply it to either account. If he does not, the creditor may do so. If neither does, the law will appropriate it according to the justice of the case, provided there are no other parties interested." In this case the account of Spivey and Bell was carried by their factor, the complainant corporation, as a running account. The account began with an amount actually due. Notes were taken for that amount plus the amount agreed to be advanced for the succeeding season. The amount actually due however was charged to the account. As advances were made they were duly charged. When the products of the season which were shipped by Spivey and Bell were sold the net proceeds were credited to

this account and at the end of the season a balance brought down. There was no special appropriation of payments constituting the credits made by either party. In such a case the rule is that the credits will be applied in discharge of the items of debt antecedently due in the order of time in which they stand in the account. "In other words," said Mr. Justice STORY in Gass v. Stinson, 3 Sumner's Reports, 98, text 112, "each item of payment or credit is applied in extinguishment of the earliest items of debt, until it is exhausted. This was the rule laid down in Clayton's case (1 Mérivale R. 572, 604, 608); and it was recognized and acted upon by the Supreme Court of the United States, in *U. S.* v. *Kirkpatrick* (9 Wheaton R. 720, 737, 738)." Upon the above authorities this court announced the doctrine quoted in Randall v. Parramore & Smith, *supra*. The Roman law, said Mr. STORY, is the foundation of the common law rule and "it is to be deeply regretted that there has been any departure in any of the authorities from its true results. The leading rule, with regard to the option given, in the first place to the debtor, and to the creditor in the second, we have taken literally from thence. But according to the rule the election was to be made at the time of payment as well in the case of the creditor as in that of the debtor," etc. "If neither applied the payment, the law makes the appropriation according to certains rules of presumption, depending on the nature of the debts or the priority in which they were incurred. And as it was the actual intention of the debtor that would in the first instance have governed, so it was his presumable intention that was first resorted to as the rule by which the application was to be determined. In the absence therefore of any express declaration by

either, the inquiry was, what application would be most beneficial to the debtor?"

It is too late for a creditor to claim a right to make an appropriation after a controversy has arisen. United States v. Kirkpatrick, *supra*. In this case we think the credits should be deemed to be payments *pro tanto* of the debts antecedently due. This seems to have been the intention of the parties as shown by the shipping contract referred to in the mortgage of which it may be said Battle was charged with notice. For by the provisions of that contract, the factor had the option to make fresh advances to Spivey and Bell, "when payment is made from time to time upon the aforesaid debt of the parties of the second part." These "fresh advances" were to be made on promissory notes or open account and in such sums as the factor deemed expedient. It has already been shown that "fresh advances" were made largely in excess of the advances agreed upon in the shipping contract and definitely stated and incorporated in the sum for which the notes were taken.

The shipping contracts made subsequently to the one referred to in the mortgage, were each new and distinct transactions of which Battle had no actual or constructive notice, and was not therefore advised of, nor took his judgment subject to the provision appearing in all of such contracts to the effect that "all indebtedness so incurred by the parties of the second part shall be secured by the lien of the mortgage last above mentioned;" nor the further provision that "if any of the foregoing notes or their renewals, or any installment of interest upon them, shall remain unpaid when due, or if any of the advances provided for herein shall not be paid at the time when due according to the agreement between the parties hereto or if any stipulation or covenant in this agree-

ment shall be and remain unperformed by the said parties of the second part, then each and every of the sums then due, whether then payable or not shall become due and payable and the mortgage securing the same shall become foreclosable for the aggregate of all sums, principal, interest and attorneys' fees."

The bill alleges that on July 1, 1915, there remained due upon the "mortgage and the indebtedness secured thereby" a certain sum. The mortgage expressly states that it was intended to be and is a mortgage to "secure payment of five promissory notes all bearing date January 15th, 1908," and further particularly described as security for the performance on the part of Spivey and Bell of "a certain contract which is called a shipping contract of even date herewith," etc.

The payments made by Spivey and Bell being applied to the payment of the original indebtedness and the "fresh advances" made to them under the shipping contract of January 15th, 1908, have extinguished the indebtedness that existed when the mortgage was executed and the "fresh advances" under the contract of that date. There was therefore no basis in the evidence for the decree of June 20th, 1916. The decree is therefore reversed, with directions to enter a decree in favor of J. J. Battle and against the Jennings Naval Stores Company for the amount of the judgment obtained by J. J. Battle against Spivey and Bell and interest thereon and costs.

BROWNE, C. J., AND TAYLOR, SHACKLEFORD AND WHITFIELD, J. J., concur.