CONSOLIDATED NAVAL STORES CO., A CORPORATION, *Plaintiff in Error*, v. H. M. WILSON, *Defendant in Error*.

## Opinion Filed November 23, 1921.

1. A debtor whose debt is composed of several items, has the right to direct to which item of his entire indebtedness a payment may be applied.

2. Where a debtor owes a debt evidenced by several notes and an open account, all of which secured by a mortgage upon certain properties, and some of the notes bear the endorsement of a third person as additional security, the debtor may upon a sale of the mortgaged property direct his creditor to apply the proceeds of such sale to the mortgage indebtedness generally. An application by the creditor of the proceeds of such sale to that part of the indebtedness not secured by endorsement is contrary to the debtor's instructions.

3. Where a debtor sells with his creditor's consent mortgaged property pledged to secure a debt consisting of several items, evidenced by notes and open account, where some of the notes bear the endorsement of a third person as additional security and directs the application of the proceeds of such sale to the mortgage indebtedness generally, such action of the debtor requires a *pro rata* distribution of the payment on the entire indebtedness.

4. The right to apply payments is one existing between the original parties, and no third person has any authority to insist upon an appropriation of the money in his own favor where neither the debtor nor creditor has required nor made such appropriation and where the surety has no equity to have the money applied in payment of the debt for which he is liable.

5. Where securities which are pledged to secure the payment of a particular debt also secured by endorsement of a third person are sold, the proceeds of such sale must be applied in payment of that particular debt to secure the payment of

which the securities are pledged. And where an endorser has agreed to be security for a limited part of the debt only, any payment upon the debt from any funds of the debtor must be applied upon that part of the debt for which the endorser is security.

6. Where one endorses a part of a debt in order to afford additional security to the creditor, neither the creditor nor debtor is bound to apply or direct a payment to be applied upon that part of the debt secured by endorsement.

7. In order for an endorser, of part of a debt which is also secured by mortgage, to be entitled to subrogation to the mortgage security he is required to pay the entire indebtedness which the mortgage is given to secure.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Judgment reversed.

*Reynolds & Rogers,* for Plaintiff in Error;

*Milam & Milam,* for Defendant in Error.

ELLIS, J. — The Consolidated Naval Stores Company brought an action against H. M. Wilson who was endorser upon two promissory notes made by J. J. Summerlin. The two notes were for the sum of three thousand dollars. One of them for two thousand dollars was made July 1st, 1914 and payable December 15th, 1914, the other for one thousand dollars was made November 28th, 1914 and payable June 15th, 1915. Each note was payable to the order of Consolidated Naval Stores Company hereinafter referred to as plaintiff. Each note provided for the payment of attorney's fees by the maker or endorser if not paid at

maturity and should be placed in the hands of an attorney for collection.   They contained a waiver by endorser of notice of dishonor or nonpayment and protest.   Each note recited that it was in renewal of one or more made by the same maker in favor of the plaintiff and dated January 15th, 1914, and secured by mortgage and contract recorded in the clerk's offices of the Counties of Nassau and Walton in certain books and at certain pages.   At the trial the Court directed a verdict for the plaintiff in the sum of $903.59.   The verdict was rendered and judgment upon it was entered for the plaintiff which seeks a reversal of it here upon writ of error.

The facts out of which grew the relations of the parties as creditor and debtor and about which there is little or no controversy are as follows:   On March 1st, 1913, the defendant was a turpentine operator and owner of the properties described in the mortgage from Summerlin to the plaintiff; they consisted of certain "turpentine or timber leases," a turpentine "still" and fixtures, pumps, barrels, "shanties," barns, stables, sheds, a dwelling house, mules and horses and a launch and motor.   The defendant owed the plaintiff, which was engaged in the business of naval stores, commission merchants or factors, about eight thousand dollars, and desired to sell his property and pay his obligations to the plaintiff.   He sold to J. J. Summerlin receiving from him several hundred dollars in money over and above the indebtedness due to the plaintiff.   Summerlin became indebted by this transaction to the plaintiff in the sum of eight thousand dollars which was credited to the account of the defendant and his debt extinguished.   Summerlin's indebtedness was secured by a mortgage upon the properties and evidenced by six promissory notes dated March 1st, 1913.   The first three notes were for one thous-

and dollars each and became due June 15th, July 15th and August 15th, 1913. Two were for twelve hundred and fifty dollars each and became due September 15th and October 15th, 1913. These notes were secured by a mortgage upon the properties acquired by Summerlin from the defendant. The mortgage was also given to secure advances to be made by the plaintiff to the defendant from time to time and it contained provisions to the effect that the mortgagor would consign to the plaintiff all turpentine and rosin manufactured or obtained upon the lands described or acquired elsewhere as soon as produced to be sold for the account of the mortgagor upon commission and that the plaintiff should have the right to apply the proceeds of the sale thereof at its option to any open account or other indebtedness of the mortgagor or upon the notes or renewals thereof and that the plaintiff was not bound to advance to the mortgagor more than eight thousand dollars "to be owing at any time" but if advances should be made so that the mortgagor's indebtedness exceeded that amount the same should be secured by the mortgage.

In the above transaction the defendant became "endorser upon three thousand dollars of the total amount of the notes" the plaintiff agreeing to the transaction provided the defendant became Summerlin's endorser for three thousand dollars of the indebtedness. The defendant testified that Mr. McNeill through whom the negotiations were carried on for the plaintiff "would not take Mr. Summerlin's mortgage without my endorsing three notes of a thousand dollars each." It is not clear which notes of the series of six were endorsed by the defendant pursuant to that agreement.

In December, 1915, Summerlin sold the properties to M. H. Wilds for twenty five hundred dollars. Wilds gave

his note to the plaintiff for that amount and a mortgage to secure it upon the same properties. The plaintiff released its lien under the Summerlin mortgage and gave the latter credit upon his indebtedness to it for the amount of the Wilds note. According to the testimony of W. J. Kelly, president of the plaintff corporation, it was informed of the contemplated sale to Wilds by Summerlin but took no part in it. At the time of the sale to Wilds, Summerlin's indebtedness to the plaintiff was greater than the original debt of his by one thousand dollars. The notes sued upon were second or third renewals of the original debt.

The declaration contained nine counts. The first six declared upon the two notes endorsed by the defendant, the remaining three were common counts for money lent, money paid by the plaintiff and account stated.

After several pleas of the defendant were eliminated by demurrer the following issues were tendered by plaintiff and accepted by the defendant: First, payment by defendant; second, payment by the maker of the notes; third, that as consideration for the endorsement of the notes by defendant all parties agreed that the proceeds from the shipment of naval stores by the maker to the plaintiff should be applied by the plaintiff in payment of the notes, that the maker directed such application of payments and plaintiff had realized sufficient money from such shipments of naval stores to pay the notes and interest; fifth, that the execution of the mortgage by Summerlin to the plaintiff as security for the payment of the notes was a condition required by the defendant before endorsing them, and that after they matured the plaintiff and the maker effected a sale of the mortgaged property without defendant's knowledge, for the sum of twenty five hundred dollars and thereby the plaintiff's claim against defendant became

satisfied and discharged *pro tanto* by payment; sixth, that the notes were secured by mortgage on real estate and chattels given as collateral security by the maker as set forth in the notes, and that after maturity of the notes the plaintiff surrendered the collateral security to the maker without the defendant's consent or notice to him; that the security surrendered was enforceable and of a value greater than the principal and interest of the notes sued on; seventh, that after maturity of the notes the plaintiff surrendered to M. J. Wilds the collateral security given by the maker to secure the payment of the notes without notice to the defendant or consent from him, that the security was enforceable and of greater value than the prinicpal and interest of the notes sued on. After issue was joined upon these pleas the plaintiff by leave of the Court interposed three replications to the fifth, sixth and seventh pleas.

It is contended by the plaintiff that these replications allege a state of facts which if true constitute a perfect reply in law to the pleas to which they were interposed. The defendant demurred to the replications and the demurrer was sustained. This order constitutes the basis of the first three asignments of error and is determinative of this litigation. The principle contended for is that under the circumstances alleged in the replications the plaintiff had a right without notice to the defendant to release the security upon a sale of it by the maker of the notes and apply the proceeds of the sale first to the notes upon which defendant was not endorser and if the sum so realized from the sale of the property was not enough to pay the entire indebtedness the endorser is liable for so much of the indebtedness endorsed by him as remains unpaid, which in the case at bar amounted to the sum of

three thousand dollars and interest, the amount of the two notes upon which he was endorser. If that proposition is true, then under the evidence in the case neither one of the six pleas of the defendant could avail him, the verdict was erroneous and the judgment should be reversed.

The first replication which was interposed to the fifth plea, which was an amended plea, is given here in full and is as follows: ''That the said mortgage mentioned by defendant's plea was executed and delivered by said J. J. Summerlin on March 1st, 1913, and secured an indebtedness of said Summerlin to the plaintiff amounting to eight thousand dollars evidenced by six promissory notes recited in said mortgage, and also securing all renewals of said notes and all interest that might accrue on said indebtedness and all future advances that might from time to time thereafter be made by the plaintiff to said Summerlin to enable him to carry on his business of producing naval stores and the mortgaged property was by the terms of said mortgage made security for all of such notes then existing, all renewals thereof and future advances without any priority or preference, except that it was therein provided that the net proceeds of all shipments of naval stores made by Summerlin to the plaintiff should be applied at plaintiff's option to the credit, part payment or satisfaction of any open account or other indebtedness of said Summerlin, or upon said notes or upon said notes or renewals thereof; and said mortgage was especially designated and referred to in said notes which defendant indorsed, and defendant well knew all the terms and provisions of said mortgage aforesaid. That pursuant to the terms thereof the plaintiff accepted renewals of said original notes and advanced to Summerlin various amounts of money with the result that after giving Summerlin credit for all ship-

ments of naval stores against plaintiff's advances, in December, 1915, Summerlin owed the plaintiff on promissory notes secured by said mortgage the sum of, to-wit, nine thousand dollars, that is to say renewal notes evidencing the original indebtedness of eight thousand dollars and also an additional one thousand dollars advanced and lent by plaintiff. Of this indebtedness six thousand dollars was evidenced by notes signed by Summerlin alone, and the remaining three thousand dollars by the notes in suit signed by Summerlin and indorsed by the defendant. In said month of December, 1915, said Summerlin sold the mortgaged property to M. J. Wilds for twenty-five hundred dollars, and then and there at Summerlin's request plaintiff released said mortgaged property from the lien of said mortgage unto the said purchaser, and said M. J. Wilds paid over to the plaintiff at Summerlin's request and to be credited on the mortgage indebtedness generally all of the consideration paid by said Wilds for said property, to-wit: promissory notes in the total amount of twenty-five hundred dollars signed by said Wilds to the plaintiff's order and secured by a mortgage given by Wilds to the plaintiff upon the said property; and the plaintiff applied and credited the said proceeds realized from said mortgaged property upon the notes signed by said Summerlin alone amounting to six thousand dollars as aforesaid, and the said proceeds were vastly insufficient to satisfy and discharge said unindorsed notes. That the plaintiff held no security out of which it could collect the notes signed by Summerlin alone, except the said mortgaged property, and has never collected or received anything from said Summerlin on account of said promissory notes, or any of them, except what the plaintiff received from the proceeds of said property."

The second replication which was interposed to the sixth

amended plea alleged the same facts and made the further allegation that the value of the collateral security surrendered was less than the amount of six thousand dollars due from Summerlin to the plaintiff on the notes secured upon which defendant was not endorser. The third replication which was interposed to the seventh amended plea made the same allegations as the second.

Unless the release of the security by the plaintiff without notice to the defendant operated in law to discharge the defendant as endorser, the first and second pleas were not supported by the evidence. The third plea which set up an agreement between the parties as to application of payments was likewise without evidence to support it beyond the testimony of the defendant who said that the understanding existed between him and Mr. McNeill "that the first three thousand dollars paid would relieve my (his) endorsement." "These notes were to be the first ones paid," that was the understanding, he said. The witness was speaking of the time when the mortgage was executed. But the notes sued on were dated subsequently to that time, the first a year and four months and the second a year and nine months thereafter. In the meantime, according to the testimony of W. J. Kelly, president of the plaintiff company and witness for defendant, the maker of the notes, Summerlin, had shipped a large quantity of naval stores to plaintiff and the former's account credited therewith, yet when the renewal notes were given and endorsed the defendant made no mention of such shipments, claimed no credit therefor but recognized his obligation by endorsing the renewal notes. The statement of the account which was attached to the deposition of the witness Kelly, does not appear in the bill of exceptions, although there is a certificate that the bill contains all of the evidence intro-

duced at the trial. But aside from this the mortgage referred to in the notes contains a clause inconsistent with such an understanding. The clause expressly authorized the plaintiff to apply the proceeds arising from the sale of such naval stores shipped to them by Summerlin under the contract to the credit, part payment or satisfaction of any open account or other indebtedness of Summerlin or upon the notes or renewals thereof, at its option.

Now the replications which were held bad upon demurrer alleged that such clause was contained in the mortgage which was referred to in the notes and that the defendant knew of such provision, that in December, 1915, when Summerlin sold to Wilds the former's indebtedness was one thousand dollars in excess of the original debt of which six thousand dollars was evidenced by six notes signed by Summerlin alone and three thousand by notes signed by Summerlin and endorsed by defendant. It is alleged that the plaintiff at Summerlin's request released the mortgage lien and Wilds, the purchaser, paid over to the plaintiff "at Summerlin's request and to be credited on the mortgage indebtedness generally all of the consideration paid by said Wilds for said property, to-wit: promissory notes in the total amount of twentyfive hundred dollars." It is alleged that the plaintiff applied the credit to the six notes signed by Summerlin alone. Which allegation excludes the idea that the credit was applied as Summerlin directed, that is generally to the entire indebtedness. According to the declaration the two notes sued upon were due when the sale to Wilds was made.

There is no allegation in the replications that the mortgage contained a clause authorizing the plaintiff to apply at his option any monies that might arise from the sale of the mortgaged properties to any part of the indebtedness,

the provision mentioned above authorized the application
by plaintiff at its option of proceeds arising from the sale
of naval stores produced from the mortgaged properties.
Therefore, so far as the plaintiff is concerned, the maker
of the notes was within his rights when he directed the
application of the sum arising from the sale of the proper-
ties to the "mortgage indebtedness generally." The debt
evidenced by all the notes was due, the property sold was
owned by the debtor, the plaintiff had merely a lien upon
it, that lien it released upon request of the debtor, there
were no conditions attached to such release, the considera-
tion for the property was paid over to the plaintiff at the
debtor's request who directed how it should be applied.
See 21 R. C. L. p. 88; Battle v. Jennings Naval Stores Co.,
74 Fla. 12, 75 South. Rep. 949.

The debtor having directed the application of the pay-
ment to the "mortgage indebtedness generally" the plain-
tiff could not apply it particularly to any part or item of
such indebtedness. When the property was sold the mort-
gage indebtedness amounted to nine thousand dollars and
interest. The indebtedness was evidenced by an open
account and several promissory notes, some of which bore
defendant's endorsement and others did not, the due dates
of all of which had passed. The application of the proceeds
from the sale of the property to that particular part of
the mortgage indebtedness represented by the notes signed
by Summerlin alone upon which there was no endorser
was contrary to the debtor's instructions but the law
regards the payment as having been applied as directed
so far as the creditor is concerned. See 21 R. C. L. p. 89;
30 Cyc. 1231.

That portion of the replication is surplusage which
alleges that the plaintiff applied the payment upon the

notes signed by Summerlin alone, for even if it amounted to a misapplication of payments the surety would be discharged only so far as he was injured by such misapplication which would be in such amount as he would be entitled to credit for upon a *pro rata* distribution of the payment over the entire mortgage indebtedness. But the plea avers that as the giving of the mortgage was a condition required by the defendant before endorsing the notes, a sale of the mortgaged property without his knowledge by consent of the mortgagee operated to discharge the defendant to the amount realized from the sale.

The general rule universally recognized is that the right to apply payments is one strictly existing between the original parties and no third person has any authority to insist upon an appropriation of the money in his own favor where neither the debtor nor creditor has made or required any such appropriation. See 21 R. C. L. p. 107.

The rule is settled in this State that the debtor or party paying the money may in case he chooses to do so direct its appropriation. See Battle v. Jennings Naval Stores Co., 74 Fla. 12, 75 South. Rep. 949; Petroutsa v. H. C. Schrader Co., 76 Fla. 574, 80 South. Rep. 486.

This general rule, however, applies to cases only where the principal makes the payment from funds which are his own and free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable. See Merchants Ins. Co. v. Herber, 68 Minn. 420, 71 N. E. Rep. 624; Kyle v. Chattahoochee Natl. Bank, 96 Ga. 693, 24 S. E. Rep. 149; Mack v. Adler, 22 Federal Rep. 570; 30 Cyc. 1251; 21 R. C. L. p. 109; Bross v. McNicholas, 66 Oregon 42, 133 Pac. Rep. 782.

The question is, does the averment in the plea, viz: that

the giving of the mortgage was a condition required by Wilson, the defendant, before endorsing the notes, show an equity in favor of the defendant to have the proceeds of the sale of such property applied in payment of the notes upon which he was endorser?

If securities are deposited or pledged to secure the payment of a particular debt of the pledgor which is also secured by the endorsement of a third person, the proceeds of the sale of such securities must be applied in payment of that particular debt to secure the payment of which the securities were pledged and cannot over the endorser's protest be applied in payment of some other debt of the pledgor. See Jones on Collateral Securities, Secs. 550-551; Bank v. Scott, 123 N. C. 538, 31 S. E. Rep. 819.

It is also true that if the endorser has agreed to be security for a limited part of the debt only, any payment upon the debt from any funds of the debtor must be applied upon that part of the debt for which the endorser is security. See 21 R. C. L. p. 108.

But if the purpose of the endorsement of a limited part of the debt is to afford additional security to the mortgage or other securities it does not follow that the debtor or creditor must apply the proceeds of. the sale of the mortgaged or pledged property to the payment of that particular part of the debt endoresd. Jones on Collateral Securities, Sec. 548 A; Cal. Natl. Bank of San Diego v. Ginty, 108 Cal. 148, 41 Pac. Rep. 38.

The plea does not aver that the mortgaged property was sold for less than its value nor that any fraud was practiced upon the defendant nor that the defendant became surety as accommodation endorser for a part of the debt only, but merely that he insisted upon the mortgage being

taken by the plaintiff. That fact alone gave the defendant no equity in the mortgaged properties and the doctrine of subrogation does not apply because the defendant to be entitled to subrogation to the creditor's right to resort to the mortgaged properties would be required to pay the entire indebtedness which the mortgage was given to secure. See Irvin v. Mutual Trust Co., 82 N. J. Eq. 629, 90 Atl. Rep. 274; Jones on Collateral Securities, Secs. 513-522.

To entitle the surety to the right to have the mortgaged properties applied to the payment of that part of the debt for which he was endorser the plea should have averred such an agreement between him and the plaintiff. See Jones on Collateral Securities, Sec. 521. Or that the defendant became security for a limited part only of the debt. In the absence of such averments it might be inferred that the parties intended to apply the proceeds of the sale of the mortgaged properties first to the payment of those notes for which the security was most precarious in order to give the plaintiff the full benefit of all his security. See Kortlander v. Elston, 52 Fed. Rep. 180; Fields et al. v. Holland et al., 6 Cranch 8, 3 Law Ed. 136; Randall v. Pettes, 12 Fla. 517-534.

No question is presented in this case of application of payments by the law, because according to the replication the debtor Summerlin at the time of the sale appropriated the proceeds to the "mortgage indebtedness generally." This we have shown he had a right to do unless the defendant who was endorser of some of the notes evidencing the mortgage debt had a superior equity in the proceeds of the sale of the mortgaged properties. See Irvin v. Mutual Trust Co., *supra.* The averments of the plea show no such equity or superior right, therefore the demurrer to the

replication should have been visited upon the plea instead of being sustained to the replication.

An examination of the authorities cited in the brief of the able counsel reveals an apparent conflict of authority upon the question of applications of payments but such conflict is more apparent than real and in many instances may be harmonized by the application of the doctrine that the right of an accommodation endorser to have the proceeds of pledged property applied to the payment of that part of the general indebtedness upon which he is surety and which the property was pledged to secure depends upon the agreement and understanding of the parties at the time of the transaction.

If it was the purpose of the creditor to take additional security in the form of an endorsement of some of the notes and the endorser met the creditor upon that proposition it would be inequitable and manifestly unjust to require the application of the proceeds of the mortgaged property to be applied first to the endorsed notes, for the whole purpose of the additional security would be destroyed by such application. See Livermore Falls Trust Co. v. Richmond Mfg. Co., 108 Me. 206, 79 Atl. Rep. 844; Mathews v. Switzler, 46 Mo. 301. On the other hand, if the endorser agreed to become surety for a limited part of the debt only that obligation was met when the debtor paid upon the debt a sum equal to such limited part so secured.

It is not clear from the testimony of the defendant or Mr. McNeill whether it was the purpose of the defendant to become surety for a limited part only of the debt of Summerlin, namely: three thousand dollars, although there is some suggestion in the testimony of both of them to that effect. If such was the fact then from what has been said

the defendant had the right to require the application of the proceeds of the mortgaged property upon that limited part of the debt for which he became surety, but as there was no issue upon that point, as the case was not tried upon such theory, we will not direct an affirmance of the judgment which seems to rest upon that theory of the case.

A discussion of the other assignments of error is unnecessary. The judgment is reversed with directions to proceed in the cause according to the doctrine announced in this opinion.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.