W. H. ALFORD, T. FIELDS, G. W. CLEWIS, J. L. ALEXANDER, AND D. W. ALFORD, *Appellants,* v. S. A. LEONARD AND W. H. LEONARD, CO-PARTNERS AS S. A. AND W. H. LEONARD, *Appellees.*

Division A.

Opinion Filed January 5, 1925.

1. The rule as to the application of payments in this State is that the debtor who makes the payment may at the time direct its application to what account or item of indebtedness he wishes and if he fails to do so the creditor may at such time make application of the payment as he desires and if neither the debtor nor the creditor at the time of payment make application thereof the law will appropriate it to the items of indebtedness according to the justice of the case, having in view the interests of third persons interested.

2. Section 3429 Revised General Statutes providing for judgment in favor of plaintiff against defendant and sureties on a forthcoming bond in attachment proceedings where the defendant shall have retaken the property on such a bond relates to attachment at law.

3. Section 3405 Revised General Statutes providing attachment in favor of a creditor holding a chattel mortgage against such property, provides merely a statutory chancery writ and it is under the control of the chancery court foreclosing the mortgage.

4. There is no provision in our statutes which specifically authorizes the entry of a judgment against the sureties upon a forthcoming bond when property has been redelivered to the defendant in foreclosure proceedings.

5. Section 3418 Revised General Statutes providing for a method of restoration of the property to the defendant in foreclosure proceedings upon giving a bond approved by the officer and condition for the payment to the plaintiff in attachment of the debt or demand and costs, when the same shall be adjudicated to be payable to the plaintiff, is applicable to chancery proceedings.

6. Property retaken by the defendant under the provisions of Section 3418 Revised General Statutes requires no order from the court for the restoration of the property and the sureties on such bond render themselves liable to a decree against them for the amount of the debt.

7. Attachments in aid of foreclosure being under the control of the court are not subject to atack as are writs of attachment at law. Proceedings for their discharge must be taken under the rules of chancery practice.

8. A judgment in chancery is called a decree.

An Appeal from the Circuit Court for Calhoun County; C. L. Wilson, Judge.

Decree reversed as to sureties.

*James H. Finch,* for Appellants.

*Carter & Carter,* for Appellees.

ELLIS, J.—Two questions are presented in this case, one involving the application of payments upon a general account for "family living expenses" to certain itnems not properly classed as such, and the other whether Section 3429, Revised General Statutes of Florida, providing for the entering of a judgment against the defendant and the sureties upon a forthcoming bond in attachment cases, applies to such a bond given for the release of property attached in aid of a foreclosure proceeding.

On February 18, 1920, W. H. Alford and S. A. and W. H. Leonard entered into a contract under which Alford agreed to cut, haul and deliver on the ramps at the Leonards' mill all the merchantable pine saw timber situated on all the lands of the Leonards lying north of the public road from Ocheesee to Altha beginning on a certain section. The cutting and hauling were to begin at once upon execution of the contract and continue with reasonable progress until all the pine timber on all the lands should be cut, hauled and delivered. The Leonards agreed to pay to Alford ten dollars per thousand feet board measure for all logs cut, hauled and delivered. The amount earned by Alford was to be considered due and payable to him monthly as the Leonards received account sales and returns for the manufactured lumber.

It was agreed that the Leonards should make advances to Alford of "expense money" for "payrolls and feed stuff, and together with a reasonable advance for living expenses" and that all the money appearing to be due to Alford under the contract "above said advances" should be "credited monthly upon a certain note and mortgage of $5,750.00 this day given" by Alford to the Leonards, "payable one year after date with interest at eight per cent per annum."

Alford agreed to use due diligence in cutting the timber,

keeping the teams in good running condition for hauling and to keep the "expense as low as possible and drawing as little as necessary for his living expenses, while he is paying off the note and mortgage."

It was agreed that if Alford should fail to carry out his part of the contract the Leonards should have the right to declare the note and mortgage immediately due and proceed to collect the same by legal methods. All expenses including reasonable attorney's fees should be paid by Alford in such event.

The note and mortgage were executed the same day, payable one year after date. The mortgage covered eighty acres of land, four log teams consisting of four carts and twelve oxen, one two-ton Nash automobile truck, three mules, thirteen head of cattle and all crops grown on the lands during the year 1920.

The mortgage contained a clause in which the parties agreed that "the proceeds coming to said Alford over and above his operating expenses and advances for family living expenses shall be credited monthly upon this indebtedness; and in case there shall be so paid and credited the sum of $3,600.00 or over at the end of twelve months which is the maturity of said note and the said Alford shall continue to perform his logging contract aforesaid, the parties of the first part (Alford) shall be entitled to an extension on the balance of said debt for not less than six months nor more than twelve months until same can be liquidated at the rate of payments or credits as aforesaid of at least $300.00 per months."

The debt of Alford to the Leonards, as evidenced by the note and secured by the mortgage, was incurred "principally" for the "purchase price of the oxen, log carts and Nash truck," described in the mortgage, which were sold

to Alford by the Leonards to enable the former to carry out his logging contract, so the answer avers.

On November 8, 1921, the Lenoards commenced foreclosure proceedings to enforce the payment of the debt due by Alford, alleging the amount due to be approximately $4,216.44. On the same day they obtained an attachment in aid of the foreclosure proceedings against the mortgaged property.

The defendant, Alford, moved to dissolve the attachment upon the grounds that the property was not of a perishable nature and that it was not being "used and consumed" by him.

The motion was denied, but the court ordered that the defendant be permitted to "retake the attached property upon a forthcoming bond" and estimated the value of the property to be two thousand seven hundred and fifty dollars. The bond was directed to be given on or before December 15, 1921, and conditioned upon having the "said property forthcoming to abide the final decree."

On December 13th the bond was given and approved with T. Fields, G. W. Clewis, J. L. Alexander and D. W. Alford as sureties.

The defendant answered the bill on December 8th admitting the execution of the note and mortgage but denying that his indebtedness amounted to $4,200.00 and averring that he was entitled to a credit for one million feet of timber delivered under the contract less certain advances made to him and setting up the contract under which he was entitled to such credit. It was averred that he promptly began the performance of the contract and continued until November 1, 1920, when the Leonards required him to discontinue it because of the low price of lumber and that they needed the engine and boiler at the mill with which to manufacture syrup; and that, with the Leonard's

consent, the defendant began hauling logs for the Neel Veneer Company. That in September, 1921, the defendant asked the complainants to allow him to resume his logging operations under his contract with them to which they agreed and directed the defendant to begin in Section 10, which was nearest their mill. The defendant was engaged in this work when his teams and truck were attached by the complainants. It is averred that there yet remains upon the lands approximately three million feet of timber to be cut and hauled under the contract; that all timber, with a slight exception, farthest from the mill had been cut and hauled by the defendant under contract and he had built truck roads for the removal of the logs to the complainants' mill. The answer presented the defense that the complainants were not entitled to a foreclosure because they had by their interference and for their own interest prevented the defendant from carrying out the logging contract on his part and that they had otherwise breached the contract.

Testimony was taken and the complainants submitted a statement of the account between them and the defendant showing a balance due on September 23, 1921, of $4,216.44.

The Chancellor ordered that as it appeared from the evidence that since the commencement of the proceedings the complainants had made further advances to the defendant under the contract and that the defendant had cut and hauled logs to the complainants' mill since the suit was begun and that the defendant was entitled to other credits for lumber cut from logs hauled by him, a Master should be appointed to ascertain the amount of lumber on the complainants' yard, the value thereof, the amount that was cut from logs hauled by the defendant and the amount advanced by the complainants and report the same to the court.

The report was made on June 30, 1922. The statement began with the balance due of $4,216.44 and showed a balance due of $2,803.68 on June 30th.

The court thereupon entered its final decree of foreclosure finding the defendant to be indebted to the complainants in the sum of $2,810.69, with interest thereon at 8% per annum from the institution of the suit, together with attorney's fees of 10% of the principal and interest, and $25.00 filing fee. A decree for the sum of $2,957.41, principal and interest, $320.74, attorney's fees and costs of the proceedings, was entered against the defendant who was required to pay the same within five days; in default thereof that the mortgaged property be sold and the proceeds thereof applied to the payment of the debt and that if the proceeds of the sale were not sufficient to pay the debt, attorney's fees and costs, that the complainant have a deficiency decree against the defendant for the balance.

The court also decreed that the complainants have and recover from the sureties on the forthcoming bond the sum of $2,750.00, the value at which the property retaken was fixed. That if the sureties paid that sum before the sale the Master should deliver the personal property to the defendant and should not sell it, but the land only should be sold. In case, however, the sureties failed to pay, then the land should be sold first and then the personal property and if the proceeds of the sale were not sufficient to pay the debt, attorney's fees and costs, the Master should report the deficiency and upon the approval of the report a money decree should be entered against the sureties on the bond, for such deficiency, not to "exceed the sum herein adjudged as the value of said personal property."

The decree was entered July 3, 1922.

On the 29th of that month the complainants petitioned the court for a rehearing to correct an error in the descrip-

tion of the land appearing in the decree. The petition was granted and the error corrected August 1, 1922.

On July 29th the defendant petitioned the court for a rehearing upon the ground, among others, that in ascertaining the amount due by the defendant the court had allowed certain items which were neither expense money for pay rolls and feed stuff, nor reasonable advances for living expenses. That these items consisted of "one trailer," charged against the defendant at the sum of $750.00, and guano in the sum of $297.50, making a total sum of $1,047.50. That this sum should be deducted from the debt ascertained to be due under the mortgage and contract and a corresponding reduction in the allowance of attorney's fees should be allowed. That the court also erred in entering judgment against the sureties upon the bond as they had produced the property and surrendered the same to the Master according to the terms and conditions of the bond.

The petition was denied, August 1, 1922.

The sureties on the forthcoming bond on the 29th day of July also filed their petition for a rehearing complaining of the entry of the judgment against them alleging that they had the property forthcoming to abide the final decree and had surrendered and delivered the same to the Master.

This petition was also denied.

The Master's report made on September 11, 1922, showed that the real estate and personal property was sold and brought the sum of $2,260.45, the personal property selling for the sum of $1,185.45. The costs were shown to amount to $1,142.54, of which expenses and feed bills for live stock amounted to $1,010.44. The report showed the amount due for principal and interest on September 4, 1922, was $3,321.85, to which the costs and expenses being added made the total $4,464.39. Deducting the proceeds

of the sale, amounting to $2,260.45, left a balance of $2,203.94. (It may be noted in passing that the expenses and feed bill for live stock amounted to more than the stock sold for at public sale.)

On September 16, 1922, the Chancellor confirmed the Master's report and entered a deficiency decree against the defendant in the sum of $2,203.94 and a decree against the sureties on the bond in the sum of $1,632.09.

From the decree the defendant and the sureties on the bond took an appeal.

The first proposition argued by the counsel for appellants is that the price of the "trailer," $750.00, and three tons of acid phosphate and five tons of guano, amounting to $372.35, should not have been charged upon the account. That is to say, while they constituted legitimate items of indebtedness they were not such items as could rightfully be classed as indebtedness to which the credits to which Alford was entitled for cutting and hauling logs under the contract could be applied by the complainants. It is contended that these items did not constitute part of the original indebtedness and could not be classed either as "operating expenses" or "advances for family living expenses."

The contract contained a clause under which it is insisted the parties were bound as to the application of payments. It was agreed that the proceeds "coming to said Alford over and above his operating expenses and advances for family living expenses shall be credited monthly upon this indebtedness," etc. The indebtedness was that which was evidenced by the note and mortgage.

It does not appear from the testimony in the case that the defendant Alford and the complainants, Leonard, had any other agreement under which a separate account for items other than operating expenses and advances for fam-

ily living expenses purchased by Alford should be kept. And no agreement was made between the parties at the time of the purchase by Alford of the trailer and guano that the two items should be charged to any other account than to the account for operating and family living expenses. In fact, there are numerous items upon the account which would seem to be improperly classed as such. For instance, tobacco, candy, accounts at other stores, lumber, mortgage to a bank, money, a phonograph and other items, to which no objections seem to have been made by the defendant either at the time they were charged or at the trial.

It also appears from the statement of the account that the trailer was charged to the defendant, Alford, on February 18, 1920, and was a part of the original indebtedness; likewase, $22.50 worth of goods that had been purchased by Alford prior to February 18th; the mortgage of Alford and wife to a bank amounting to $976.25; the Nash truck; four log carts and twelve oxen. These items aggregated $6,148.75 or $398.75 more than the original indebtedness as evidenced by the note and mortgage. This discrepancy is not explained in the evidence.

There also appear to be credits upon the account amounting to $835.00 which seem not to have been derived from the earnings of Alford under the contract for cutting and hauling logs to the complainants' mill from their lands. There is nothing in the evidence to show that the defendant, Alford, directed the application of these payments either to the original debt or any item upon the general account.

The rule as to the application of payments in this State is: that the debtor who makes the payment may at the time direct its application to what account or item of indebtedness he wishes and if he fails to do so the creditor

may at such time make application of the payment as he desires and if neither the debtor nor creditor at the time of payment makes any application thereof the law will appropriate it to the items of indebtedness according to the justice of the case having in view the interests of third persons interested. See Battle v. Jennings Naval Stores Co., 74 Fla. 12, 75 South. Rep. 949; Petroutsa v. H. C. Schrader Co., 76 Fla. 574, 80 South. Rep. 486; Consolidated Naval Stores Co. v. Wilson, 82 Fla. 396, 90 South. Rep. 461.

The payments were credited to the general account upon which the items consisting of the "trailer," "guano" and acid phosphate had already been charged. The mortgage covered the defendant's "crops of agricultural products" for the year 1920. The guano and acid phosphate were purchased in April of that year.

The amount credited, which seems not to have been derived from the defendant's earnings under the contract, if applied to the debt for guano and acid phosphate and the difference between the amount of the note and the sum apparently due, including the cost of the trailer, at the time the note and the mortgage were excuted by Alford would be more than enough to extinguish those items upon the open account.

We find no error, in view of the evidence in this case, on the part of the Chancellor in thus applying those credits, and therefore no error in his denial of the petition for a rehearing upon that ground.

The rule that in the absence of any application by either debtor or creditor as to the payment the law will apply it to the debt which is least secured seems to have been followed by the Chancellor in this case. See Bell v. Bell, 174 Ala. 446, 56 South. Rep. 926, 37 L. R. A. (N. S.) 1203; Cain v. Vogt, 138 Iowa 631, 116 N. W. Rep. 786, also annotations, 21 A. L. R. 704.

The next question presented is the application of Section 3429 Revised General Statutes to a transaction where in an equitable proceeding for the enforcement of a chattel mortgage the mortgaged property is attached and released to the defendant by order of the court upon a forthcoming ·bond conditioned to "have said property forthcoming to abide the final decree."

Section 3429, Revised General Statutes, is as follows: "Judgment against principal and sureties.—If judgment by default be entered in favor of the plaintitff, and the defendant shall have re-taken the property upon a forthcoming bond, final judgment by default shall be entered at the same time against the defendant and the sureties on the bond for the amount of the judgment against the defendant if it be less than the value of the property as fixed by the officer, or for the value of the property so fixed if such value be less than the judgment against the defendant. If the defendant shall have re-taken the property upon a bond to pay the debt such judgment shall also be entered against the sureties for the amount of the judgment against the defendant. In case of a judgment against defendant after trial, judgment shall be entered against the sureties as above provided, except that the value of the property retaken by defendant shall be found by the jury or the jury (as the case may be tried before the one or the other), and stated in the finding or verdict."

This section relates to attachments at law. Section 3405 Revised General Statutes, which provides that a creditor who has commenced a suit to foreclose a mortgage on personal property, the possession of which may have remained in the debtor, may have an attachment against such property in the circumstances enumerated in the statute, provides merely a statutory chancery writ and it is under the

control of the chancery court foreclosing the mortgage. See Weston v. Jones, 41 Fla. 188, 25 South. Rep. 888.

Section 3418 Revised General Statutes provides for a method of restoration of the property to the defendant in foreclosure proceedings upon giving a bond approved by the officer and conditioned for the payment to the plaintiff in atachment of the debt or demand and costs when the same shall be adjudicated to be payable to the plaintiff. But in this case the property was not restored to the defendant under this section of the statute, but upon an order of the Chancellor which provided that the bond, both as to amount, sureties and conditions, should be approved by him.

Section 3429, *supra*, which provides for judgment against principal and sureties where the defendant shall have retaken the property upon a forthcoming bond, and under which the Chancellor entered the decree against the sureties in this case, has no application. This section, as said in the case of Weston v. Jones, *supra*, constitutes a part of the statutory proceedings in attachments at law.

There is no provision of the statute which specifically authorizes the entry of a judgment against the sureties upon a forthcoming bond when property has been redelivered to the defendant in foreclosure proceedings.

In the case of Hooks v. Farmers' Union Warehouse Co., 62 Fla. 496, 56 South. Rep. 501, the decree against the sureties was reversed because it was said that the bond was not payable to the defendant and conditioned as the statute required.

Section 3418, *supra*, is the only one in the Article relating to return of property to defendants in attachment which is applicable to chancery proceedings.

If property is retaken by the defendant under that section no order of the Court for its restoration seems to be

necessary, certainly no provision is made for such order. In such case the sureties may render themselves liable to a decree against them for the amount of the debt, because they bind themselves in the proceeding to abide the decree by paying the amount adjudged to be due thus making themselves parties to the proceeding. But the condition of the bond in this case was merely to have the property forthcoming to abide the judgment.

The attachment being under the control of the Court is not subject to attack as are Writs of Attachment at law. Proceedings for their discharge must be taken under the rules of Chancery practice. Therefore one who wishes to have his property restored to him pending the foreclosure proceedings in which an attachment has issued, but who does not wish to obligate himself by sureties unqualifiedly to pay the amount which may be adjudged to be due, applies to the Chancellor for an order directing the restoration of the property to him. The Chancellor having control of the Writ may in the exercise of his discretion direct such release upon whatever conditions or terms he may deem to be equitable or just.

In cases where expenses and feed bills for the maintenance of live stock are likely to exceed the value of the property, or at least the amount for which it may be sold, the Chancellor may direct such restoration upon less stringent conditions than the unqualified obligation to pay the judgment in toto or to the extent of that value which the Court may place upon the property restored.

In this case the condition of the bond was met. The property was produced and sold under the decree. There was no further liability upon the sureties and the decree against them was erroneous.

It is contended that the certificate of the Clerk to the transcript is not in form and is substantially defective.

18—Vol. 88.

The word "decree" is used in place of the word "judgment." So the certificate reads: "A correct transcript of the record of the decrees." Counsel contend that it should read: "A correct transcript of the record of the judgment."

Special Rule 3 contains the word "judgment," but that rule was made for the making up of the record in civil actions at law for the Supreme Court. A note appended provides that in cases of appeals in Chancery the transcript of the record shall conform as near as practicable to the rule. A judgment in Chancery is called a decree. An inspection of the record shows that the decree entered was a final decree. See Bouvier's Law Dictionary.

So much of the decree of July 3, 1922, and the decree of September 14, 1922, as adjudges that the sureties upon the forthcoming bond, to wit: T. Fields, G. W. Clewis, J. L. Alexander and D. W. Alford, to be indebted in any amount to the complainants and requires the payment of any sum of money for principal, interest, attorney's fees or costs is hereby reversed and the costs of these Appellate proceedings shall be charged against the Appellees.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.