1. FRANK H. FARNHAM and HENRIETTA FARNHAM, his wife, ROYSTON OLIVER, M. T. TIGHE and E. L. BARBER, v. F. M. BLOUNT, Agent. (No. 27,705).

2. FRANK H. FARNHAM and HENRIETTA FARNHAM, his wife, ROYSTON OLIVER, M. T. TIGHE and E. L. BARBER, v. LOUISE A. PRINDIBLE, as guardian for Cora Louise Blount and Marion Q. Blount and Cora Louise Blount. (No. 27,707).

3. FRANK H. FARNHAM and HENRIETTA FARNHAM, his wife, ROYSTON OLIVER, M. J. TIGHE and E. L. BARBER, v. F. M. BLOUNT and DOWDELL BROWN, as Executors of the Last Will and Testament of Cora M. Blount, deceased. (No. 27,706).

11 So. (2nd) 785                                            June Term, 1942
August 4, 1942                                                    En Banc

W. W. *Flournoy* and F. *Churchill Mellen,* for appellants.

*Yonge, Beggs & Cárter,* for appellees.

CHAPMAN, J.:

We have for review three appeals from final decrees entered by the Circuit Court of Escambia County, Florida, foreclosing three separate and different purchase price mortgages upon the individual interests in the home of the late W. A. Blount known as "Seamarge." One of the mortgages was to the adult heirs, while the other was to the minor heirs of the late W. A. Blount. The appeal identified as No. 3 involves a purchase money mortgage not on any portion of the Blount home but on a small tract of land then owned by Cora M. Blount, now deceased, who was the widow of the late W. A. Blount, lying adjacent or closely to Seamarge. Suit

in her behalf was brought by her representatives, namely, her son F. M. Blount, and her son-in-law, Dowdell Brown. Voluminous testimony taken in support of the issues made in the three suits has been certified here in a single record.

Appeal No. 1 involves a final decree in behalf of the adult heirs of the late W. A. Blount, brought in the name of their agent, F. M. Blount, against the Farnhams, et al., as to their respective undivided interests in Seamarge, while appeal No. 2 involves a final decree in behalf of the two minor children of the late W. A. Blount, Jr., in a suit brought in the name of their guardian, Louise A. Prindible, against the Farnhams, et al., as to the undivided interest of the minors in and to Seamarge. These separate suits consisted of the usual or ordinary bills of complaint seeking a decree for the balance due on the purchase price mortgages.

The joint and several answers of the Farnhams to the two foreclosures were to the effect (a) the Farnhams were strangers in Pensacola and environs and not acquainted with Florida property and values; (b) that they negotiated with Harold McCaskill, agent of the owners, for the purchase of Seamarge as a home; (c) the owners, through their agent, represented the property to be in first class condition; (d) the roof on Seamarge was in good condition; (e) the heating plant was adequate to heat the building; (f) the plumbing and fixtures and the electric wiring were of approved standards, and the Farnhams, not having an opportunity to examine the building prior to the consummation of the deal, relied upon the representations and statements of the owners and their agents as to these material and important factors. That as an inducement to purchase the agent represented that Seamarge was of the best construction in the South and the original cost thereof was $300,000.00; that the designing architect traveled through Europe for a long period and expended large sums in examination and considering mansions and castles prior to concluding the architectural plans and specifications of Seamarge.

The defendants, accepting as true the false representations as to the condition of Seamarge as made by the owners and agents, made payments and executed and delivered the

purchase price mortgages sued upon, but after becoming domiciled therein learned that the converse was true in that: (a) the original cost of construction of Seamarge was not $300,000.00 but less than $100,000.00; (b) that the roof was built up and overlaid with tile and 19 years old, concealed from view and highly decomposed and totally inadequate to protect the building from rain and the elements; (c) the boiler and the heating plant were old, unusable, contained cracks and leaked continuously and could not be used; (d) the plumbing was obsolete, continuously out of repair and totally inadequate to meet the ordinary use and enjoyment of the home (e) the breakwater structures or bulkhead were defectively constructed, unsafe and totally inadequate to protect the home from storms and hurricanes. That a partial failure of consideration existed and the false and fraudulent representations of the owners and agent made to the defendants induced them to purchase the property. That the defendants have paid more than the market value of the property to the plaintiffs below because of these fraudulent representations and in a court of equity the plaintiffs below because of these facts should be required to cancel of record the mortgages and dismiss the foreclosure suits. Evidence was taken on these issues and decrees for the mortgagees was entered in the lower court.

Seamarge is a country estate containing approximately thirteen acres situated on the shores of Pensacola Bay about three and one-half miles distant from the center of the City of Pensacola. It has a 500 foot frontage on the Bay and extends back about 1220 feet. The late W. A. Blount, in 1906 or 1907, constructed on the tract two residences, two servants' houses, double garage, stables, pumping plant, greenhouse, walks, drives, and a bulkhead on the Bay of approximately 500 feet in length. On the grounds are beautiful palms, magnolias, live oaks, bamboo and other trees and plants indigenous of Florida, as well as exotic plantings. The Blount home contains 28 rooms and is constructed of Brazilian granite and timber 85 per cent heart pine. It consists of three stories, with a tile roof, and in the basement is space for a laundry, storage room, fuel room, hot water tank, etc. The members

of the Blount family resided at Seamarge from 1908 or 1909 until some time after the death of Mr. Blount in 1921. One of the contractors was paid by Mr. Blount $58,000.00 or $59,000.00 for labor and materials going into the property, but the sum did not include all the costs of the materials and other expensive construction items. The record sustains the conclusion that the owner invested in this property from time to time, an amount or sum ranging from $90,000.00 to $125,000.00. In a bankruptcy proceeding the owner fixed the value of Seamarge at approximately $75,000.00.

Counsel for appellants in appeals Nos. 1 and 2 *supra,* admit the execution and delivery by the Farnhams of the purchase price notes and mortgages and payment by them to the appellees of large sums of money and the acceptance of a deed of conveyance; and counsel contend that the owners of Seamarge and their agents by false and fraudulent representations induced the appellants to accept the deed and execute and deliver the purchase money notes and mortgages. The appellants were residents of the State of Michigan and ignorant of and not informed as to Florida real estate values, and relying exclusively upon the untrue statements and false representations of the owners and their agents they acted thereon to their injury and paid out large sums of money, and for the first time, some time after going into the possession of the property learned and realized the falsity of the representations to their detriment and financial injury. The appellants assert that they did not receive the value contracted for when paying the money, accepting the deed and executing the notes and mortgages, and elected to retain the property conveyed and recoup their losses against the amount due under the purchase price notes and mortgages—not for the amount stipulated in the total sum of $125,000.00, but for the market value of the property conveyed when purchased.

This Court had before it pleas of recoupment in the case of Marianna Lime Products Co. v. McKay, 109 Fla. 275, 147 So. 264, when we, in part, said:

"Each of the pleas in question was a plea of recoupment of damages and each of them except the third amended plea was based upon an alleged breach of a verbal warranty as-

serted to have been made at the time of the consummation of the trade evidenced by the written contract sued on but not referred to therein. The third plea was for recoupment of damages for an alleged breach by the promisor of a term of the written contract itself.

A plea of recoupment is purely defensive. It rests on the principle of allowing evidence in reduction of the plaintiff's damages to be introduced, where the plaintiff sues on a contract consisting of mutual stipulations made at the same time, the defendant being allowed to defend against the plaintiff's claim for damages by recouping his own damages that are alleged to have arisen by reason of plaintiff's breach of another part of the same contract, whether the contract consists of one or several parts. Payne v. Nicholson, 100 Fla. 1459, 131 Sou. Rep. 324; Jarrett Lbr. Co. v. Reese, 66 Fla. 137, 63 Sou. Rep. 581; Delco Light Co. v. Hutchinson Properties, 99 Fla. 410, 128 Sou. Rep. 831. A plea of recoupment implies that plaintiff has a cause of action, but asserts that defendant, too, has a counter cause of action growing out of a breach of some other part of the same contract on which plaintiff's action is founded, or from some other cause connected with that contract. See 57 C. J. 358."

Peacock Hotel Inc., et al., v. Shipman, 103 Fla. 633, 138 So. 44, involved the foreclosure of purchase price notes and mortgage on a hotel. One year after the conveyance of the hotel and the giving of the notes and mortgage the mortgagors set up as a defense against the foreclosure fraud and misrepresentation, and this Court held that the defense was untimely and lacking in diligence, when we, in part, said: (text 103 Fla. pp. 638-39).

"Where recission is asked for of a contract for the purchase of property upon the ground of a fraudulent oral misrepresentation of a material existing fact affecting the nature or usefulness of the property, the fact about which the representation is made must be one the true nature of which is not capable of being ascertained by the exercise of reasonable effort on the part of the party to whom the misrepresentation is made.

"The record discloses that the Peacocks and the Shipmans

were strangers and that they dealt at arm's length. If, as appellants contend, they relied implicitly upon appellee's statements as to the number of revenue producing rooms that the hotel contained, as to its state or condition of repair, as to the possibility of making money in its operation, and as to the profits which they might realize from their investment, they are nevertheless charged with all the knowledge which they might have obtained had they pursued an inquiry to the end with diligence and completeness regarding these matters. They cannot claim more than a year after the mortgage was given and after foreclosure proceedings were started that they were misled to their injury to such extent as to entitle them to rescind the entire transaction after they had caused a corporation to be organized to take title to the property they were buying and otherwise exhibited evidence of shrewd business judgment throughout the entire transaction.

"One possessing the right to rescind a transaction on the ground of fraud, misrepresentation, mistake or other sufficient cause and desiring to exercise such right, must not be guilty of any unreasonable or unnecessary delay in the assertion of his purpose and in taking steps to make it effective, or he will be denied relief in equity on the ground that such delay is tantamount to a waiver of his objections to the transaction. Mizell v. Watson, 57 Fla. 111, 49 So. 149; Hirschman v. Hodges, 59 Fla. 517, 51 So. 550. See also Ansley v. Bank of Piedmont, 113 Ala. 467, 21 Sou. Rep. 59.

"In the case at bar the purchaser went into possession of the property on May 17, 1929. The asking for the rescission and cancellation of the purchase contract was not filed until October 15, 1930, with no excuse whatsoever being offered for the delay."

The case of Storrs v. Storrs, 130 Fla. 711, 178 So. 841, involved a plea of recoupment between the original parties to the contract and wherein alleged fraudulent representations about a designated newspaper plant were made as an inducement to buy, and there was paid $2500.00 as a cash payment, with a purchase money note and mortgage given for the balance in the sum of $6,500. The purchasers went into possession of the plant and paid interest on the note from

1925 to 1935, and during this period gave a renewal note, with knowledge of the false and fraudulent representations. The defendant giving the renewal note and paying interest thereon with a knowledge of the fraud practiced on him, could not because of these facts be heard on a plea of recoupment.

The power of avoidance for fraud or misrepresentation is lost if the injured party after acquiring knowledge of the fraud 'or misrepresentation manifest to the other party to the transaction an intention to affirm it . . . the injured party must assert his remedial rights with diligence and without delay upon becoming aware of the fraud. After he obtains knowledge of the fraud or has been informed of facts and circumstances from which such knowledge would be imputed to him, a delay in instituting judicial proceedings for relief, generally, will be regarded as a bar to equitable relief. See Pomeroy's Equity Jurisprudence, Vol. 3, par. 916-17, pages 596-598; Bonded Adjustment Co. v. Anderson, 186 Wash. 226, 57 Pac. (2d) 1046, 106 A. L. R. 166, and annotations on page 172. Counsel for the parties cite the same Florida cases to sustain their respective positions as to the law of fraud and misrepresentation. The point of cleavage is the application of the law to the facts presented.

The Farnhams, on July 11, 1925, paid $5,000.00 to Harold McCaskill, a Pensacola Realtor, as a binder and obtained a contract to purchase Seamarge for the sum of $125,000.00. Previous offers by the Farnhams of a sum less than $100,000.00 for the property were declined. The Farnhams visited Seamarge prior to the payment of the $5,000.00 and inspected the property and Blount home. The Farnhams testified that their inspection was hasty and cursory, and inquiries by them were made of McCaskill as to the roof, heating plant, plumbing, bulkhead and initial cost of construction. They stated that F. M. Blount did not accompany them on a visit to the place prior to the payment of the $5,000.00, while Blount and McCaskill testified that Blount went and pointed out these different items and they were granted an opportunity for inspection. On this point the evidence is conflicting and in dispute. The Farnhams visited

the property several times after paying the $5,000.00 and prior to accepting a deed and delivering the purchase price notes and mortgages. They moved into the property in January, 1926. Payments on the notes and installments of interest were made from 1925 until 1932 or 1933, when the Farnhams during that period did not complain or assert recoupment claims. The failure of Farnham to make further payments was due to the depression of 1930 and 1931 affecting adversely his income on realty sales and holdings around Detroit, although Frank H. Farnham testified that in 1926 he offered to reconvey Seamarge to the Blounts and take his losses, but his alleged offer was denied by F. M. Blount.

If the testimony of Harold McCaskill and F. M. Blount as to their alleged visit with the Farnhams to Seamarge on the afternoon of July 11, 1925, was by the chancellor considered as controlling, when Blount piloted the Farnhams through the property and the home and while there Blount declined an offer of $100,000.00 for the property as made by Farnham, and an opportunity granted for an inspection and observation of all the latent defects of the property, (as commented on by this Court in Peacock Hotel Inc. v. Shipman, *supra*,) namely, the roof, plumbing, heating plant and bulkhead, were discussed then the equities of the cause were correctly determined in the lower court. Many inferences appear in the testimony to sustain the view that Blount did accompany McCaskill and the Farnhams to the property on July 11, 1925. The mortgagees contend that the roof, plumbing, heating plant and bulkhead were in good condition when the Farnhams acquired title and no complaints were registered by them from 1926 until the time of filing the foreclosure proceedings. Five members of the John H. Perry family testified that they lived in the home during the month of March and part of April, 1942, and the heating plant, roof and plumbing were satisfactory.

The record contains pictures of the roof, showing it to be in a dilapidated condition when the pictures were made. Leaks appear and plaster is washed or broken from the ceiling and walls. Testimony is given to the effect that the materials and workmanship of the roof under the tile was sub-standard;

that the copper thereon should have contained crimps, and other criticisms are offered. Statements as to estimates of amount necessary to place the roof in a suitable condition so as to make the home livable were offered and given by men engaged and skilled in the roofing of houses. On the other hand, it is disclosed that the dilapidated condition of the roof as shown by the pictures and testimony does not reflect the condition thereof when the trade was made in 1925, but some ten years thereafter, also that during the Fall of 1926 a severe hurricane damaged the roof after the Farnhams acquired title to the property. The workmanship of the roof without the crimps was approved by F. M. Blount, an architect and realtor, and other witnesses corroborated his statements. These diputes and conflicts were presented to the chancellor below.

The heating plant was shown to be in a bad state of repair when the Farnhams moved into the property. One section of the boiler had to be replaced and there is testimony to the effect that the same never rendered satisfactory service. Prior to the time the Farnhams took over the property and during the six weeks period in the Spring of 1924 the Perry family had no trouble with the heating plant; and E. J. Blount, sometime prior to the sale, occupied the property and the heating plant was satisfactory. Harold McCaskill visited the Farnhams at Seamarge in the Winter of 1926 and the house was warm. The Farnhams testified that McCaskill told them prior to the purchase that the heating plant was modern and in first class condition and would give adequate service. McCaskill testified that he was without knowledge of the heating plant, was a stranger to the entire property and had never been about it until he drove the Farnhams through it on the afternoon of July 11, 1925. The chancellor resolved these disputes in the testimony against the appellants.

The plumbing and fixtures by the testimony were shown to be obsolete, worn out and in a dilapidated condition, and therefore not serviceable. It is shown that the longevity of this equipment was known to the mortgagees. The Perrys and E. J. Blount testified that shortly prior to the time the Farnhams acquired title that the plumbing was not only ser-

viceable but efficient and satisfactory. The Farnhams testified that the plumbing and fixtures were non-serviceable when they went on the property in 1926. They had knowledge of these conditions but continued to make payments of principal and interest on their notes from 1926 to 1932 or 1933. These facts were presented for the first time after foreclosure was instituted.

It is next contended that if the bulkhead had been constructed of suitable materials the hurricane would have never destroyed it. It is shown that it was constructed of "pecky" cypress and sand pumped from the bay. It is possible that if it had been constructed of cement, brick or stone that this contention would be accurate, but the destructive nature of a Florida hurricane cannot always be pre-determined. The Farnhams were about this bulkhead prior to the purchase of the property. Estimates or opinions of value, condition, character and adaptibility to certain uses are not actionable unless the seller resorts to some fraudulent means in preventing a prospective purchaser from making an examination of the property under consideration. See Williams v. McFadden, 23 Fla. 143, 1 So. 618, 11 Am. St. Rep. 345.

The record discloses that Mr. and Mrs. Farnham for many years prior to 1925 were engaged in the real estate business in the City of Detroit, Michigan, and had accumulated a comfortable fortune. They specialized in acreage and would sell to the subdividers as the City of Detroit grew. The mother of each was then living but well advanced in years and the purchase of Seamarge would be, as considered by them, an ideal home for these aged ladies, and the Farnhams assigned this as a reason for the purchase. When reaching Pensacola in early July, 1925, they became acquainted with Harold McCaskill and he showed and sold them acreage located in West Florida. Mr. Farnham's testimony tends to establish a fiduciary relation with McCaskill in his Florida purchases. Mr. McCaskill, in part, disagrees on this point with him. We fail to find in the record sufficient evidence of agency between the Blounts and McCaskill as to bind them by his (McCaskill's) representations to the Farnhams, and

especially is this true as to the minors before the Court. See Chase & Co. v. Miller, 81 Fla. 472, 88 So. 312.

We have given considerable time to the study and examination of the large record in this cause. Able oral arguments have been presented at the bar of this Court by counsel for the respective parties. Thorough and exhaustive briefs have been presented and the case when considered as an entirety forces the conclusion that the legal rights of the litigants have been forcibly and conscientiously presented by counsel of record. We have reached the conclusion that the appellants in appeals Nos. 1 and 2, *supra*, failed to prove by sufficient evidence the material allegations of their amended joint and several answers and the learned chancellor below correctly held that the equities of the cause were with the mortgagees.

Appeal No. 3 involves a purchase price foreclosure by the representatives of the estate of Mrs. Cora M. Blount against the Farnhams on a tract of land situated in the vicinity of Seamarge. The defense of recoupment because of fraud and fraudulent representations is not presented but only the defense of application of payments. The defense became known for the first time when it appeared in the answer to the foreclosure suit. It is shown that the Farnhams paid to the Blounts from 1925 to 1931 or 1932 a sum for principal and interest of more than $100,000.00. The transactions were between Mr. Farnham and F. M. Blount, agent for the Blount heirs. It was carried out largely by mail between the parties living in Detroit and Pensacola. Mr. Farnham sent a draft in the sum of $5,000.00 to a friend and former business associate and directed that he go to the office of Mr. Blount at Pensacola and pay out of the $5,000.00 draft the balance of $1,500.00 then due on the Cora M. Blount mortgage and that the remaining sum be credited to the amount due on the mortgages involved in appeals Nos. 1 and 2, *supra*. Mr. Blount acknowledged receipt of the draft and credited the entire amount on the two mortgages of Mr. Farnham on Seamarge. The exhibits in the record sustain this application.

Mr. Blount denied that a request was ever made to him

that the sum of $1,500.00 due on the Cora M. Blount mortgage be paid out of the $5,000.00 Correspondence between the Farnhams and Mr. Blount was introduced into evidence and this correspondent disclosed that the balance due on the Cora M. Blount mortgage was considered by the parties. Mr. Blount insisted on payment of the Cora M. Blount mortgage and the Farnhams desired additional time and no contention was made, prior to the suit, that the Cora M. Blount mortgage had been discharged by payment. It is settled that the debtor making payment has the lawful right at the time of making it to direct to what account the payment should apply. If the debtor fails to direct application of the payment when made, the creditor has the lawful right to apply the payment. See Alford v. Leonard, 88 Fla. 532, 102 So. 885; Ott v. Bray, 114 Fla. 547, 154 So. 209. It was the chancellor's conclusions that there was not a request by the Farnhams that the money paid should be applied to the payment of the Cora M. Blount mortgage. Such an inference is deductible from the evidence and supported by the corresspondence of the parties had subsequent to the date of payment of the $5,000.00. These disputes and conflicts in the testimony were for the chancellor to decide and there is sufficient testimony to sustain his conclusions.

The three final decrees involved in appeals Nos. 1, 2 and 3, *supra,* are each hereby affirmed.

WHITFIELD, BUFORD, THOMAS and ADAMS, JJ., concur.

TERRELL, J., not participating.

BROWN, C. J., disqualified.