## McCORMICK v. LEWIS et al.
### Civ. A. No. 230–M.

United States District Court
N. D. Florida, Marianna Division.
Feb. 12, 1952.

John M. Coe, Pensacola, Fla., for plaintiff.

E. Dixie Beggs, Yonge, Beggs & Lane, Pensacola, Fla., for defendant.

DE VANE, Chief Judge.

This cause came on for trial and final hearing before the court January 24, 1952 with all parties present and represented by counsel. Upon plaintiff resting his case defendants moved the court for judgment in their favor dismissing the complaint and the court having heard argument of counsel on said motion and being fully advised in the premises granted same. Counsel for plaintiff, announcing his intention to appeal the case, requested that the court make findings of fact and conclusions of law and this memorandum decision is filed herein in compliance with said request. The facts upon which this court granted defendants' motion and the grounds therefor are briefly set out below.

On July 28, 1949 plaintiff and defendants entered into an agreement whereby plaintiff bound himself to buy the entire capital stock of Gordon Land Company, a corporation, for a purchase price of $104,000 and to buy a certain outstanding contract given by Gordon Land Company to third parties for $15,000. Defendants agreed to deliver the one-half of the capital stock of the Land Company owned by them and to deliver a release of the outstanding contract, which was to be acquired by them. They did not obligate themselves to deliver the remaining one-half of the capital stock owned by other stockholders, but agreed to use their best efforts to secure its deposit under the escrow agreement. The sale was to be concluded only in the event the remaining stockholders also deposited their stock with the escrow agent. The purchase and sale was to be consummated on or before November 9, 1949.

The Commercial Bank of Panama City, Florida was named as escrow agent in the agreement and upon its execution defendants delivered the agreement and the 600 shares of capital stock of the Land Company, owned by them, to the escrow agent, and plaintiff deposited with said agent the sum of $27,000 in accordance with the agreement. Of this deposit $15,000 was to be used by defendants to acquire the outstanding contract mentioned above.

Subsequently defendants acquired and deposited with the escrow agent the outstanding contract which was to be cancelled upon the consummation of the agreement. To protect plaintiff during the 90 days' period allowed for the consummation of the agreement it was provided in the contract:

1. That plaintiff should be the exclusive sales agent for the Gordon Land Company properties during the period.

2. That the entire income of the Gordon Land Company during that period would be deposited in the Apalachicola State Bank subject to disbursement by checks signed by plaintiff and defendants.

3. That the assets of the Gordon Land Company would not be impaired by distribution to stockholders or other payments made, except for legitimate operating expenses which were to be paid from $8,500 deposit then existing in the Commercial Bank at Panama City, which was not subject to disbursements by checks of plaintiff.

The evidence shows that on or about August 29, 1949 defendants notified plaintiff that the remaining outstanding stock would be deposited with the escrow agent upon his production of the $92,000 then owing. Plaintiff came to Panama City with the money but defendants failed to produce the stock. The evidence also shows that again on September 16, 1949 defendants notified plaintiff that the remaining stock would be deposited upon his coming to Panama City with the required money, but defendants were again unable to produce the remaining outstanding stock.

On November 1, 1949 all the stock was deposited with the escrow agent and plaintiff was duly notified thereof. Due to financial difficulties plaintiff failed, within the remaining nine days of the option to pay to the escrow agent the necessary money to consummate the transaction. Plaintiff, therefore, sought and obtained from defendants a thirty day extension of the option, but again failed during this period to raise the necessary money to consummate the transaction, whereupon

the escrow agent returned to defendants and to the other stockholders their stock and the deposit money was declared forfeited by the defendants.

Subsequently, on July 5, 1951, plaintiff brought this action for recission of the escrow agreement and in and by the suit sought to recover the $27,000 deposit money, plus several thousands of dollars of expenses allegedly incurred by plaintiff in his effort to consummate the transaction. The grounds for the recission of the escrow agreement and recovery of the deposit and expenses are as follows:

1. Alleged misrepresentation by defendants that the mortgage obligation of the Gordon Land Company to the United States (through War Assets Administration) was current at the time of the execution of the agreement, when in fact, there was a default in the sum of $81,675.82.

2. That during the life of the escrow agreement, and while plaintiff was exclusive sales agent for the Gordon Land Company, defendants sold steel rails of the Company at a price substantially below their real value, thereby depleting the assets of the corporation.

3. That the defendants failed to deposit $52,500 of insurance proceeds in the Apalachicola State Bank, which plaintiff contends, but defendants deny, was required to be done under the escrow agreement and that defendants converted the proceeds to non-corporate uses in violation of the agreement.

4. Under the escrow agreement plaintiff was made exclusive agent for the corporation during the life of the agreement. Plaintiff charges that by reason of a letter from defendant, H. M. Lewis, dated September 14, 1949, forbidding him from the premises of the Gordon Land Company, he was prevented from making sales.

5. That the corporation conveyed to certain of its officers and employees certain parcels of real estate by back-dating deeds during the life of the escrow agreement, thereby attempting to defraud plaintiff.

Plaintiff offered considerable testimony in support of these allegations during the trial of the case and while all the allegations were not satisfactorily sustained by the evidence the unexplained testimony on the record created a prima facie case of wrongdoing by defendants. The evidence also conclusively shows, however, that plaintiff was fully aware of most of these matters from the date they arose and that he not only took no steps to cancel the option, but, on the other hand, sought and secured a thirty day extension thereof and during all the times from November 1, 1949 until the option with the extension expired he endeavored to consummate the transaction. The evidence in this case utterly fails to show that plaintiff ever, during the lifetime of the option, or of the extension thereof, took any steps to cancel it because of any acts of defendants now relied upon by plaintiff to secure its cancellation and a refund to him of his $27,000 deposit, plus expenses incurred by him in connection with his efforts to consummate the transaction.

 It is well settled by the decisions of the Supreme Court of Florida that a party injured by fraud must assert his remedial rights without delay upon becoming aware of the fraud and after he obtains knowledge of the fraud or has become informed of facts from which such knowledge would be imputed to him a delay in asserting his rights constitutes a bar to equitable relief: Farnham v. Blount, 152 Fla. 208, 11 So.2d 785; Lang v. Horne, 156 Fla. 605, 23 So.2d 848.

Plaintiff's testimony that despite the fact he had full knowledge of those things he now asserts entitle him to recover, that he, nevertheless, attempted to consummate the agreement, defeats his right to recover in this case.

A judgment in defendants' favor will be entered in this case in conformity with this memorandum decision.