PEARSON, DANIEL, Judge.
Onelia Padrón Lowy, the widow of Robert E. Lowy and one of the beneficiaries of his will, appeals orders of the probate court awarding Betty Kessler the sum of $68,500 as a fee for Kessler’s services as personal representative of the estate.[1] Lowy contends, and we agree, that the only fee to which Kessler is entitled is $15,000, the amount which Kessler agreed to accept in consideration for her appointment by the testator as his personal representative and attorney for the estate.[2]
The order under review recites in pertinent part these findings of fact:
“1. That a contract was entered into between the Decedent, ROBERT E. LOWY, during his lifetime, and BETTY KESSLER wherein BETTY KESSLER was to receive the sum of $15,000.00 for Personal Representative of the Estate. Said contract was made a provision of ROBERT E. LOWY’S Last Will and Testament.
[[Image here]]
“3. That the contract, however, is a voidable contract because the Testator made misrepresentations of material facts and concealed facts, which misrepresentations induced BETTY KESSLER to enter the agreement. BETTY KES- *918 SLER reasonably relied to her detriment upon the misrepresentations and would not have otherwise had the full facts been disclosed.
“4. That the Decedent had failed to disclose to BETTY KESSLER the extent of his assets and further failed to disclose that he had not reported to the Internal Revenue Service income received over a period of many years prior to his death.
“5. That the Decedent concealed facts of such magnitude that BETTY KES-SLER had stated at the time of the taking of her testimony that she would not have entered into this contract for $15,-000.00 had she known the value and complexities of the Estate and the Decedent’s failure to report income received to the Internal Revenue Service.
“6. That the Decedent’s failure to report income to the Internal Revenue Service resulted in an extraordinary amount of work by BETTY KESSLER, both as Personal Representative and Attorney for the Estate, which she could not have anticipated given the facts which she had been led to believe when she had entered into the fee agreement.”
After some additional less pertinent findings, the order concludes by rescinding the contract between Kessler and the decedent and fixing the quantum meruit fee.
Were this a case — although it is difficult to imagine one — where Kessler performed her extensive services before learning that the testator had misrepresented the size of his estate and its potential problems, we would agree with the trial court that Kes-sler should be freed from the yoke of her fee agreement. Instead, however, this is a case in which Kessler, three weeks before the testator’s death, learned that the estate was worth $600,000 more than she had been led to believe when the testator discussed the making of his will and that the testator had failed to report large amounts of income on his personal income tax returns.[3] While Kessler quibbles that she did not learn of the full value of the estate until several days after Lowy died — there was actually $800,000, not $600,000, of treasury notes found in the safe deposit box — she had invested a mere several hours in servicing the estate by the time of this new discovery.
We have no quarrel with Kessler’s argument that, having entered into an agreement to accept $15,000 as her fee under the misapprehension about the size and difficulty of the estate, she should not be compelled to carry out the agreement. See generally Yost v. Rieve Enterprises, Inc., 461 So.2d 178 (Fla. 1st DCA 1984). The difficulty with her argument is that Kes-sler was not compelled to carry out the agreement. When she learned the truth about the estate, she could have exercised her right to rescind the agreement; instead, she undertook to perform under it, after which she sought to rescind only that portion of the agreement limiting her fee. Deeply embodied legal principles require that a person unwilling to act under the terms of a contract not induce the belief that she assents to its terms by standing by silently and performing under it. In re Hayden’s Estate, 172 Misc. 669, 16 N.Y. S.2d 126 (Sur.Ct.1939). Kessler’s acquiescence in the contract after learning of the true facts concerning the estate estops her from seeking any fee other than that called for by the contract. University of Florida Foundation v. Miller, 478 So.2d *919 482, 484 (Fla. 1st DCA 1985) (“[I]f a personal representative enters into a contract with a decedent during the latter’s lifetime regarding compensation, the representative is bound by the terms of the agreement once he accepts such office.”); see Rood Co. v. Board of Public Instruction, 102 So.2d 139 (Fla.1958) (acceptance of contract’s benefits waives right of rescission); Famham v. Blount, 152 Fla. 208, 215, 11 So.2d 785, 788-89 (1942) (the power of avoidance for misrepresentation is lost if the injured party affirms the contract after acquiring knowledge of the truth); Hendricks v. Stark, 99 Fla. 277, 286, 126 So. 293, 297 (1930) (“It has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the validity and effect of a contract; and where one has an election to ratify or disaf-firm a [contract], he can either claim under it or against it, but he cannot do both, and having adopted one course with knowledge of the facts, he cannot afterwards pursue the other.”). Simply stated, a contract cannot be “partially” rescinded. See, e.g., Borck v. Holewinski, 459 So.2d 405 (Fla. 4th DCA 1981).
Accordingly, the orders awarding Kes-sler fees are reversed and the cause remanded with directions to award a fee of $15,000.
Reversed and remanded.

. The order of December 30, 1986, awarded Kessler the sum of $60,000. An order of February 27, 1987, granted Kessler’s motion for rehearing and awarded her an additional $8,500.

. Kessler agreed to act as attorney for the estate for the sum of $15,000 and waived any personal representative fee to which she may have been entitled.

. The will which Kessler drew was executed by Mr. Lowy in January 1982; Mr. Lowy died a few weeks later, in March 1982. In April 1983, after Kessler had nearly completed her representation of the estate, she wrote to Mrs. Lowy and others to request a $60,000 fee, stating in part:
T also have explained to you in the past that three weeks prior to Bob’s death he had advised me that he had approximately $600,-000.00 worth of U.S. Treasury securities and had not reported on his IRS returns the income received from same. This came to me as a great surprise because of his former representations as to the size of the estate. At that time I strongly suggested that he contact his accountant in order to amend his past returns and include this income. Bob, as you know, never did this prior to his death. This alone from the very beginning appeared to be an insurmountable problem inasmuch as he did not keep records to indicate how long he had held these Treasury bonds and had failed to pay taxes.”